ALEXANDER L. MACFEAT, Administrator of WALTER MAC
FEAT, deceased, *vs.* THE PHILADELPHIA, WILMINGTON and
BALTIMORE RAILROAD COMPANY, a corporation of the State
of Delaware.

*Case—Personal Injuries—Resulting in Death—Evidence—Negli-
gence — Passenger — Common   Carrier — Rights   and
Duties—Speed   of   Train—City.   Ordinance—
Dangerous   Tracks—Damages.*

1. In an action against a railroad company for damages for the death of
plaintiff's intestate, testimony showing that the deceased was a careful man is not ad-
missible.

2. The question whether the deceased's injuries were such as would have been
caused by being struck in the manner alleged, held not to be a matter for expert
testimony.

3. Under the facts and conditions shown, a witness was not permitted to state
whether in his judgment the platform, passage way and crossing at the place of the
accident were unusually unsafe.

4. The plaintiff is permitted to show that the defendant company was in the
habit of standing the shifting engine and one or more cars in front of the station about
the time of the approach of a passenger train, to act as a bar to keep the people
back from the dangerous part of the platform where the tracks are.

5. An ordinance of the city held to be admissible, although the declaration of
the plaintiff averred only generally that the train of the defendant was, at the time of
the accident, moving at an unlawful rate of speed.

6. Under our practice a motion to strike out testimony must be made at or
about the time the testimony is given.

7. A photograph of the scene of the accident admitted, under certain condi-
tions ; and another not admitted, under certain other conditions.

8. Exception cannot be taken to the language of the Court in refusing a
nonsuit.

9. There are certain things which amount to negligence in law, whether any
active or positive negligence be proved or not. The violation of a city ordinance is of

MAC FEAT'S ADMR. vs. P., W. & B. R. R.    53

SYLLABI.

itself an act of negligence, which only requires to be proved to render a wrong-doer liable for any injury resulting from such misconduct.

10.    The rights and duties of company and passenger defined.

11.    It is not necessary to constitute a person, a passenger of a railroad company that he should have had a ticket, or that he should have been actually upon the train, but if it was the bona fide intention of the deceased, at the time of the accident, to board the defendant's train, or his acts, and other facts and circumstances, were such as to reasonably inform the defendant that he intended to board the train, he was entitled to such care and protection on the part of the defendant as is required under the law where the relation of passenger and carrier exists.

12.    A common carrier of passengers is liable for injuries to the latter only in case of the carrier's negligence; but the law exacts great care from those to whose charge as common carriers passengers are committed.

13.    When the arrangement of a station is such that a passenger has to cross the track either before entering or after leaving the cars, he has a right to assume that the track may be crossed safely, provided he crosses at a proper and reasonable time.

14.    In the absence of any evidence to the contrary the law presumes that at the time of the accident the deceased did his duty, and did exercise reasonable care. This, however, is merely a presumption of law, and may be rebutted.

15.    The rights and duties of the passenger defined, where the danger is imminent, the exigency of the moment great, and there is little time for reflection.

(*March 4, 1904.*)

LORE, C. J., and PENNEWILL and BOYCE, J. J., sitting.

*Levin F. Melson* and *Horace G. Knowles* for plaintiff.

*Herbert H. Ward* and *Andrew C. Gray* for defendant.

Superior Court, New Castle County, February Term, 1904.

ACTION ON THE CASE ( No. 38, September Term, 1902 ) brought by Alexander L. MacFeat, administrator of Walter MacFeat, deceased, against the Philadelphia, Wilmington and Baltimore Railroad Company, to recover damages for the death of said deceased

which was alleged to have been caused by the negligence of said company, on the 26th of June, 1902, at its French Street Station in the City of Wilmington.

At the trial plaintiff proved that on the 26th of June, 1902, Walter MacFeat was standing upon or crossing over the spur track of the defendant Company nearly, opposite and south from the waiting-room door of the defendant's French Street Station about the time the 1.37 p. m. Philadelphia express was due. That several others who were waiting for said train were also standing or moving about said tracks ; that there was a cement pavement extending entirely around said station 137 feet long and varying in width from 28 to 35 feet; that near the side track or spur on which MacFeat was standing and to the south of it was the south-bound track of the defendant company, and six feet further to the south of the latter track was the north-bound track of said company— all of which tracks were at grade and had boards between them forming a crossing or passage way from the said station to certain of defendant's trains. That when the said express train was coming up to the station on the north-bound track, suddenly and without prior warning, a shifting engine of the defendant company, with two empty passenger cars attached, started west on said track on which MacFeat was standing and at the same time began to blow off steam ; that MacFeat apparently startled by the unexpected movement of the shifter, and in order to escape being run over by the same, moved away from said track, with his right side towards the north-bound track on which the express train was then coming in at a very rapid rate ( the testimony being that at the time of the accident the train was running from 25 to 30 miles an hour), and in so doing was struck in the hip or back by the projecting timbers of the cow catcher of the engine of said express train whereby he was hurled in front of and underneath the running board at the front of the moving shifter ; that his body was rolled over a few times and crushed under said running board before the shifter came to a standstill ; that by said striking by the engine and rolling

under the running board of the shifter MacFeat was so badly injured that he died in about six hours thereafter.   It was further proved that the deceased was employed at the Kiamensi Woolen Mills near Wilmington but usually went to his home in Philadelphia on Saturdays to visit his family and as a rule traveled over the B. & O. Railroad but sometimes used the defendant company's road ; that on the Saturday in question he rode into town from Stanton with a witness named Guest and told the latter that he was going home to Philadelphia from Wilmington on the train that left there somewhere about one o'clock.   That on arriving in Wilmington about twelve o'clock said witness stopped his team at Front and Madison Streets and MacFeat got out and walked on down Front Street towards the defendant company's station.   Witness learned the following morning that MacFeat had been struck and killed by one of the defendant's trains.

The defendant produced evidence to the effect that MacFeat crossed the track in front of the shifter at a rapid rate and proceeded diagonally across the southbound to the northbound track, on which the express train was approaching, with his head down and his hands in his pockets and never looked or stopped until he was struck by the said express train.

During the course of the trial the following rulings were made as to the admission of testimony :

*Alexander L. MacFeat,* the plaintiff, was asked by Mr. Knowles the following questions :

Q.   State as to your brother's habits with respect to industry at the time of his death ?

A.   He was a very steady man and never lost any time from his work, that I know of.

Q.   Was he or not a careful man ?

A.   I would consider him to be very careful.

*Mr. Gray* :—We object.   That question has been ruled on in this Court before.   It is not whether he was an ordinarily careful

man or not. The sole issue here is—if there is any issue as to his care—as to whether at the time of the accident he was in the exercise of due care.

*Mr. Melson:*—The object of the question is to show that if he was careful, his life was of more value than that of a careless man. I believe the Court ruled it in in the Cox case.

PENNEWILL, J. :—You mean it has reference to his earning capacity ?

*Mr. Melson:*—Yes, reference to the loss.

PENNEWILL, J. :—We think it too general.

*Mr. Ward:*—I move that the testimony on that point be stricken out.

PENNEWILL, J. :—Let the answer to that question be stricken out.

*Dr. James A. Draper,* who testified to the nature of the wounds upon the body of Walter MacFeat, was asked by Mr. Knowles the following question :

Q. Were those injuries that he received, and the shock, such as would have been caused by being struck by an express train or the engine of it, going at the rate of 25 or 30 miles an hour and his body being rolled or crushed under a running-board of a shifting engine ?

( Objected to by counsel for defendant, as not a proper question for an expert to answer. Objection sustained.)

*John Sharp,* a witness produced and duly sworn, at the trial of the above stated case, on behalf of the plaintiff, was asked by Mr. Knowles, among others, the following questions :

MAC FEAT'S ADMR. vs. P., W. & B. R. R.      57

EVIDENCE.

Q. Are you familiar with the tracks and the crossing there (referring to the tracks and crossing at the French Street Station of the defendant Company)?

A. Yes, sir.

Q. Right in front of the station?

A. Yes, sir.

Q. And have seen others passing over it to trains going backward and forward?

A. Yes, sir; I have traveled over it every day for over a year.

Q. Is that platform there and passageway or crossing, or not, in your judgment, an unusually unsafe crossing for persons to use and to wait upon for the north-bound trains?

(Objected to by Mr. Ward, of counsel for defendant, on the ground that it was calling for a conclusion of fact, which was for the jury to determine and not for the witness.)

PENNEWILL, J.:—The majority of the Court hold the question to be inadmissible.

Q. In being down to take the 1.37 train, and other north-bound trains, have you seen the shifter and those waiting cars at any other position than where they were on that day?

(Objected to by counsel for defendant as irrelevant.)

(Counsel for plaintiff stated that they wished to show a custom on the part of the defendant company of standing the shifting engine and one or more cars in front of the station about the time of the approach of the 1.37 train, to act as a bar or as a fence to keep the people back off of the dangerous part of the platform where the tracks are; that it was proper to have the train there, that it was frequently seen there and did serve that purpose.)

PENNEWILL, J.:—We think this question is inadmissible.

*Mr. Knowles :*—We offer in evidence the City Ordinances, Section 12, page 376, in reference to speed of trains passing through the city.

(Objected to by Mr. Gray, of counsel for defendant, on the ground that in order to introduce in evidence an ordinance of a municipality, said ordinance should be identified and described with particularity in the pleadings, whereas the allegation in plaintiff's declaration concerning the same was that the defendant's train which caused the accident was at the time moving at an unlawful rate of speed through the city, to wit, at a speed greater than six miles an hour. No authority was cited in support of the above contention.)

PENNEWILL, J.:—We think the Ordinance admissible.

(Mr. Gray, of counsel for defendant, here states to the Court that the witness Lewis Guest, called on behalf of the plaintiff at the afternoon session of the preceding day, had testified to certain statements made by Walter MacFeat, on the morning of the accident, to the latter concerning said MacFeat's intention about going to Philadelphia on the afternoon train of that day ; that such statements were obviously improper and although no objection was made to the testimony at the time, yet he considered that under the principles of evidence there could be no time limit before the case was submitted to the jury, for a motion to strike out evidence and, therefore, he made the motion that all such evidence as he had above referred to given by said witness, should be stricken out.)

PENNEWILL, J.: —You made no objection at the time to this evidence and under our practice, we think it is too late to make the motion now. Our practice is to require the motion to be made at or about the time the evidence is given.

The Court refuse your motion to strike out the testimony.

MAC FEAT'S ADMR. vs. P., W. & B. R. R.     59·

EVIDENCE.

*Harry Bucher,* a witness being produced, sworn and examined on the part and behalf of the plaintiff, testified as follows :

*By Mr. Knowles :*

Q.   Where do you reside and what is your occupation ?

A.   At 902 West Eighth Street and I am a photographer.

Q.   At the request of counsel for plaintiff in this case, did you make a photograph of French Street Station.

A.   I did.

Q.   Are you familiar with that locality ?

A.   I am.

Q.   Have you been familiar with it for the last several years?·

A.   Yes, sir.

Q.   What is the date of the photograph or negative which you made ?

A.   The fourteenth of December, 1903.

Q.   Was the condition of the track and station there at that time the same as it had been for two years prior to that ?

A.   To the best of my knowledge.

Q.   You have been familiar with it all of that time ?

A.   Yes, sir.

Q.   You have been down there going to take the trains ?

A.   Yes, sir.

Q.   Is that the photograph from the negative made at the time and place you just stated (Shows photograph to witness) ?

A.   This was made a week prior to that.

(The above photographs are here offered in evidence by Mr. Knowles, objected to by Mr. Gray, who, pending the decision of the objection, cross-examines the witness as follows :

## CROSS-EXAMINATION.

*By Mr. Gray :*

X.   Where was your camera posted when you took the photograph—being the one showing the train ?

A.   This one was made by a man in my employ.

X.  It was not made by you ?

A.  No, sir ; the other was made by me.

X.  You don't know where that was taken from ?

A.  This was made from the position of French Street looking east.

X.  Do you know where the camera was posted ?

A.  I imagine from this view, about the middle of the street.

X.  Was it taken with a camera ?

A.  Yes, sir.

X.  What kind of a camera ?

A.  I could not say.

X.  What paraphernalia was there ?

A.  An ordinary focus camera.

X.  Is it such as you would use in your studio ?

A.  No, sir ; it is different, but it is a view camera.  We use different focus lenses for outdoor and indoor work.

X.  You did not take that one yourself?

A.  Not that one ; no, sir.

*Mr. Gray* :—We object to the admission of the photograph, showing the train, as not being taken by this witness at all.

*The Witness:*—It was made under my supervision, though.

X.  You were not present, though ?

A.  No, sir.

PENNEWILL, J. :—Do you offer both of them or only one, Mr. Knowles ?

*Mr. Knowles:*—We will offer them separately.  We will withdraw this one showing the train, for the present, and our offer covers the one now without the train.

X.  ( Mr. Gray continues ) Who took this other one ?

A.  I did.

X.  What time of day did you take it ?

A.   I took that about half-past eight o'clock in the morning.

X.   Where was your camera posted there ?

A.   I was standing at the southwest corner of Water and French streets.

*Mr. Ward :*—We object to the admission of this photograph, the conditions not being the same as testified to in this case.

PENNEWILL, J. :—We think this is admissible. The objection is overruled.

*Mr. Knowles :*—We now offer this other photograph in evidence—the one showing the train.

*By Mr. Knowles :*

Q.   Who made that photograph ?

A.   Mr. Wingfield, who is in my employ.

Q.   Was it made at your request ?

A.   Yes, sir.

Q.   Is Mr. Wingfield an employee of yours ?

A.   Not at the present time, but was at the time this was made.

Q.   Was the order for that photograph given to you at your place of business ?

A.   It was.

Q.   And in accordance with that did you send your employee or representative out to take that photograph ?

A.   I did.

Q.   Can you identify it as being a photograph of that particular place or station, the camera having been placed at or near the northeast corner of Water and French Streets ?

(Objected to by counsel for defendant, and form of question changed as follows ):

Q.   You are an expert photographer ?

A.   I am a photographer.

Q. How long have you been engaged in that business ?

A. About twenty-five years.

(Mr. Knowles here states that he desires to examine this witness, to see whether or not, as an expert, he can say where the camera was placed to take the picture or photograph, which he wished to offer in evidence.)

PENNEWILL J.:—We think this is not a question for expert testimony; and we hold that this picture is inadmissible.

( At the conclusion of plaintiff's evidence, counsel for defendant moved for a nonsuit, on the ground of contributory negligence on the part of the plaintiff. After said motion had been fully argued by the respective counsel, the Court rendered the following opinion overruling the said motion.) :

PENNEWILL, J.:—Gentlemen, we have carefully considered the motion for a nonsuit made in this case, and while we have very grave doubt of the plaintiff's right to recover upon the evidence presented, we think the case should go to the jury. Therefore we decline to order the nonsuit.

*Mr. Knowles :*—I ask to note an exception to the remarks of the Court in refusing the nonsuit.

LORE, C. J.:—We do not think this is an exceptionable matter ; the question as to a nonsuit being one entirely within the discretion of the Court.

*Mr. Knowles :*—May it please the Court, I desire to note an exception to the ruling of the Court upon my application for an exception to the remarks of the Court in refusing the motion for a nonsuit.

LORE, C. J. :—Let it be noted that you asked leave to except, which was refused.

MAC FEAT'S ADMR. vs. P., W. & B. R. R.     63

EVIDENCE.

*Frank Hyatt,* a witness being produced, sworn and examined, on the part and behalf of the defendant testified, among other things, as follows:

*By Mr. Gray:*

Q.   Do you remember the twenty-sixth day of May, 1902, the day this man MacFeat was killed?

A.   Yes, sir.

Q.   Where were you standing about half past one o'clock, or somewhere along there?

A.   I was standing at Front and the depot—Front and French—on the pavement of the station.

Q.   Did you see this man who was killed?

A.   Yes, sir.

Q.   Where did you first see him?

A.   The first I seen of him he ran into me.

Q.   He was running?

A.   Yes, sir; he was on a zig-zag.

*By Mr. Melson:*

X.   Where was this man, on Front Street?

A.   Front and French.   I was standing on the corner.

*Mr. Melson:*—We object to the testimony as to what this man was doing at Front and French Streets, or on any other street; or as to what he was doing at any time or place other than the time and place of the accident.

*Mr. Gray:*—Their witnesses have testified that they saw this man standing on the southbound track two or three minutes before the accident.   This is to meet that testimony.

PENNEWILL. J.:—We think it is admissible.

PENNEWILL, J., charging the jury:

Gentlemen of the jury: —This is an action brought by Alexander L. MacFeat, administrator of Walter MacFeat, deceased, against the Philadelphia, Wilmington and Baltimore Railroad Company, to recover damages for the death of said deceased, which is alleged to have been caused by the negligence of said company on the twenty-sixth day of May, 1902, at its French Street Station in this city.

The declaration filed in the case consists of numerous counts, but we think the negligence averred therein, and relied upon by the plaintiff, may be summarized as follows:

That the defendant did not provide or furnish sufficient, suitable and safe platform and passage ways for the decease at said station.

That the defendant negligently and carelessly failed to properly warn the deceased of the movement of the cars operated and controlled by the defendant, by guard, bell, whistle or otherwise.

That the defendant knowing that deceased was caught and fastened by, under and beneath its engine, did negligently move, start and back said engine, thereby crushing and mangling the deceased.

That by and through the negligence of the defendant, its engine or car was driven or struck against the deceased without any notice or warning being given to him.

That the defendant negligently furnished the deceased unsafe ingress to its trains, in that it failed to have the supply train in the proper and usual position, and by reason thereof an engine or car of the defendant was driven and struck against the deceased.

That the defendant, knowing of the position of the deceased under its engine or shifter, negligently started, moved and backed said engine or shifter, thereby wounding and injuring the deceased.

That the defendant negligently ran and operated its engine, with cars thereto attached, at the time and place of the accident, at a speed greater than it was authorized by law to do, to wit, at a speed upwards of six miles and hour.

MAC FEAT'S ADMR. vs. P., W. & B. R. R.    65

CHARGE.

It is also averred in said declaration that the defendant was negligent in causing one of its trains to approach said station without being stopped before reaching a passenger train that was receiving passengers; and also in failing to have its servants and employes standing at the proper place upon the said platforms and passage ways of said station to give proper notice to the deceased of the movement of its trains. It is, however, admitted by the plaintiff that there is no evidence in the case to support either of these last two averments, and they are, therefore, not to be considered by you.

In some of the counts of plaintiff's declaration, it is alleged that the deceased was a *passenger* of the defendant company at the time and place of the accident, and in other counts it is alleged that he was on the platforms and passage ways of the said company at the time of the accideht, *lawfully* or with the knowledge of the defendant.

The defendant company denies that it was guilty of any negligence that caused the death or injury of the said Walter MacFeat; and, moreover, insists that if there was any negligence, it was the negligence of him, the said Walter MacFeat, and not the negligence of the company.

We have been asked by the defendant to direct you to find a verdict for the defendant. This we decline to do.

We say to you, gentlemen, that with the facts or evidence in the case, the Court have nothing to do. They are for your determination alone. You are the sole judges of the effect and weight of the testimony. You have heard all the evidence, and it is now for your careful consideration and determination, applying thereto the law as we shall declare it to you.

This action is based upon negligence, which has often been defined by this Court to be the want of ordinary care, that is, the want of such care as a reasonably prudent and careful man would use under similar circumstances.

It is for you to determine from the evidence whether there was any negligence that caused the accident complained of, and if there was, whether it was the negligence of the defendant or of Walter MacFeat, the plaintiff's intestate.

To enable the plaintiff to recover at all, he must show to your satisfaction by a preponderance of the evidence, that the negligence which caused the accident, if any there was, was the fault of the defendant company. The burden of proving such negligence is upon the plaintiff, and the defendant can be held liable only for such negligence as constitutes the proximate or immediate cause of the injury.

There are certain things which amount to negligence in law, whether any positive or active negligence be proved or not. The violation of an ordinance of this clty is of itself ( *per se* as we may say ) an act of negligence, which only requires to be proved to render a wrong-doer liable for any injury resulting from such misconduct. In such case, however, the defendant would not be liable unless the violation of the ordinance, that is, the excessive speed of the train, caused the accident complained of; nor would the defendant be liable if the injury was caused by the negligence of the deceased. The law does not permit anyone to recover damages from another for an injury if his own negligence has contributed thereto, or where, by the exercise of reasonable care he could have avoided it.

The term ordinary care, when applied to the management of railroad engines and cars in motion, imports all the care which the peculiar circumstances of the place or occasion reasonably require, and this will be increased or diminished according as the ordinary liability to danger and accident, and to do injury to others, is increased or diminished in the movement and managenent of such engine and cars.

It is the duty of a railroad company to give timely and sufficient warning by bell, whistle or otherwise, of the approach of trains, and to run its trains at a rate of speed proper and reasonable under the circumstances; and if the defendant failed to make use

# MAC FEAT'S ADMR. vs. P., W. & B. R. R. 67

CHARGE.

of such usual and appropriate means to warn the deceased at the time and place of the accident, it would be negligence on its part; and if the accident occurred by reason of its failure so to do, the defendant would be liable, provided the deceased did not by his own negligence, or want of care, contribute to the accident.

But, on the other hand, it is equally well settled that the person injured was also bound at the same time to use ordinary care to avoid the injury, and the care and diligence which he was bound to exercise must be in proportion to the danger to be avoided. It is a general rule that persons crossing railroad tracks are bound to the reasonable use of all their senses for the prevention of accident, and also to the exercise of all such reasonable caution as ordinarily prudent and careful persons would exercise in like circumstances.

As we have before stated, the plaintiff claims in certain counts of his declaration that the plaintiff's intestate at the time and place of the accident, was a passenger of the defendant company; this, however, being denied by the defendant. It is for you to determine, from the evidence, whether he was such passenger or not. It is not necessary to constitute him a passenger that he should have had a ticket, or that he should have been actually upon the train of the defendant. If you believe that it was the bona fide intention of Walter MacFeat, at the time of the accident, to board the defendant's train, and that the defendant had knowledge of that fact, or that the acts and conduct of the deceased, and the other facts and circumstances, were such as to reasonably inform or notify the defendant that he intended to board the train, he was entitled to such care and protection on the part of the defendant as is required under the law where the relation of passenger and carrier exists.

A common carrier of passengers is liable for injuries to the latter only in case of the carrier's negligence, and not when the passenger could have escaped the injury by the use of such care on his part as a reasonably careful person would take of himself under like circumstances.

The law, however, exacts great care, diligence and skill from

those to whose charge as common carriers passengers are committed. Common carriers of passengers are responsible for any negligence resulting in injury to them, and are required in the preparation, conduct and management of their means of conveyance, to exercise every degree of care, dilligence and skill which a reasonable man would use under such circumstances. This obligation is imposed on them as a public duty; and by their contract, to carry safely, as far as human care and forethought will reasonably admit.

*Flinn vs. P., W. & B. R. R. Co.. 1 Houst., 469; Betts vs. W. C. Ry. Co., 3 Pennewill, 448.*

When the arrangement of a station is such that a passenger has to cross the track either before entering or after leaving the cars, he has a right to assume that the track may be crossed safely, provided he crosses the track at a proper and reasonable time. The tracks of a railroad company over which frequent trains are passing, is a place of danger, and neither a passenger, nor other person, has a right to go upon them at an improper time.

In the absence of any evidence to the contrary, the law presumes that at the time of the accident the deceased did his duty, and did exercise reasonable care and caution. This, however, is merely a presumption of law, and may be rebutted by evidence showing that he did not exercise such care and caution.

If the negligence of the deceased, Walter MacFeat, contributed to and entered into the accident at the time the injuries were received, the plaintiff cannot recover, even though the company was also guilty of negligence. In such case the deceased would be guilty of contributory negligence, and the law will not attempt to measure the proportion of blame or negligence to be attributed to each party.

The plaintiff, however, would be entitled to recover, notwithstanding there had been some negligence on the part of the deceased, if it was the negligence of the defendant alone that was the proximate or immediate cause of the accident, provided the negligence of the deceased was not then contributing to, and did not at that

precise time enter into the accident. In other words, if, notwithstanding any previous negligence of the deceased, the company could have prevented the accident by the use of ordinary and reasonable care.

The plaintiff's right to recveor is based upon the negligence of the defendant. The burden is upon the plaintiff to prove such negligence to your satisfaction by a preponderance of the evidence; and where contributory negligence is set up as a defense, it must be proved by the defendant in like manner.

While a person should not be held guilty of contributory negligence, who in the effort to avoid immediate danger, in the exigency of the moment, suddenly and without time or opportunity for reflection, puts himself in the way of other peril without fault on his part, and particularly so if the defendant has placed the person in such position, yet no one has a right to needlessly place himself in a place of danger, and if a person, failing to observe due care walks into a danger that the observance of due care would have enabled him to avoid, he is no less guilty of contributory negligence than he who, by the observance of due care could extricate himself from danger, but fails to make any effort for his personal safety, and because thereof is injured. One approaching a railroad crossing is bound to know that it is a place of danger, and he must give that attention to the sights and sounds of warning of an approaching train, if any there are, that a man of ordinary caution, under like circumstances, would give.

A pure accident without negligence on the part of the defendant is not actionable, and if you should believe that it was of such character, it would come under the head of unavoidable accident, and the plaintiff could not recover.

If you shall believe from a preponderance of the evidence in this case that at the time of the accident the train that struck the deceased was running at a rate of speed in excess of six miles an hour in violation of the ordinance of the City of Wilmington, and that such excessive speed was the proximate cause of the death of

the deceased ; and shall also believe that the deceased was free from any negligence on his past that contributed to the injury, your verdict should be for the plaintiff.  But the plaintiff would not be entitled to recover, because of such excessive speed, if such excessive speed was not the proximate cause of the death.

Or, if you should believe that at the time of the accident the defendant was not exercising ordinary care, as we have defined it to you, that is, all the care and circumspection, prudence and discretion, that an ordinarily prudent and careful man would have exercised under the circumstances, and that the want of such care and diligence was the proximate cause of the injury to the plaintiff ; and shall also believe that the deceased was free from any negligence that contributed to the accident, then your verdict should be for the plaintiff.  But if you should believe that it has not been shown by the preponderance of the testimony that the negligence of the defendant was the proximate cause of the death of Walter Mac-Feat, or if you should believe that the negligence of Walter Mac-Feat himself contributed to his death, your verdict should be for the defendant.

If you should find for the plaintiff, your verdict should be for such a sum as you believe from the evidence the deceased would probably have earned in his business during life and left as his estate at the time of his death, and which would have gone to his next of kin ; taking into consideration his age, his reasonable probabilities of life, his ability and disposition to labor, and habits of living and expenditure.

Verdict for defendant.