EVANS ROBERTS *vs.* MARYLAND, DELAWARE AND VIRGINIA RAIL-
WAY COMPANY, a corporation of the State of Delaware.
DAVID B. NAILOR'S ADMINISTRATORS *vs.* THE SAME; and
MARY A. NAILOR, widow, *vs.* THE SAME.

1. RAILROADS—CROSSING ACCIDENTS—ACTIONS—DECLARATION.

In an action for injuries sustained in a crossing accident, a count alleg-
ing that it was defendant's duty to give due and timely notice and warning
of the approach of its trains to the crossing by sounding the whistle, and that
it failed to perform its duty in this respect, sufficiently negatived the giving
of warning other than by blowing the whistle, as it alleged a duty to give
warning, a failure to perform such duty, and then particularized such fail-
ure, by stating a failure to blow the whistles.

2. RAILROADS—CROSSING ACCIDENTS—ACTIONS—DECLARATION.

In an action for injuries sustained in a collision at a crossing, which plain-
tiff approached from the south, a count alleging that it was not possible for
the driver of an automobile approaching the crossing or a locomotive from
the east either one to see the other until the driver of the automobile had
approached within a very few feet of the crossing, was demurrable, since if
it was intended to allege that it was impossible for either to see the other
when the traveler was approaching from the north the allegation was not
pertinent, while if it was intended to allege that this was impossible when the
traveler was approaching from the south the defendant was entitled to a
definite allegation to this effect.

3. RAILROADS—CROSSING ACCIDENTS—LIABILITY.

The failure of a railroad company to station a flagman at a crossing is
evidence to be submitted to the jury upon a proper showing of unusual dan-
gers at the crossing, and to be considered by the jury in determining under
all the circumstances whether the company was negligent in respect to giv-
ing due and sufficient warning of the approach of trains; but such failure
is not negligence *per se*, as the company may have used other and more appro-
priate and sufficient means of warning, and hence a count alleging a duty
to provide a flagman and a failure to perform such duty was demurrable.

4. RAILROADS—OPERATION—HIGHWAY CROSSINGS—SIGNALS.

A railway company must operate its trains with the care and prudence
which the peculiar circumstances of the place reasonably require, and under
peculiar circumstances or on extraordinary occasions must give warnings at
some crossings in addition to those required by statute.

5. RAILROADS—OPERATION—HIGHWAY CROSSINGS—SIGNALS.

If at a railway crossing there are obstructions of such a nature that a
traveler on the highway is prevented from seeing an approaching train, or
if the peculiar conditions surrounding the crossing prevent a traveler using
due care and caution from hearing the blowing of the whistle, the degree of
care required on the part of the railroad company to warn travelers of the
approach of trains is correspondingly increased.

6. RAILROADS—CROSSING ACCIDENTS—ACTIONS—DECLARATION.

In an action for injuries sustained in a crossing accident, a count alleging a duty to provide a bridge across and over the railroad at such crossing, and a failure to perform such duty, was demurrable, in the absence of any statute requiring the maintenance of a bridge there; the common law not obliging railroads to erect bridges over grade crossings.

7. RAILROADS—CROSSING ACCIDENTS—ACTIONS—DECLARATION.

In an action for injuries sustained in a crossing accident, a count predicating negligence on the failure to place a signboard at such crossing, indicating the dangers of the crossing, was demurrable; the failure to erect a signboard being merely evidence of negligence, and not negligence *per se.*

8. RAILROADS—CROSSING ACCIDENTS—ACTIONS—DECLARATION.

In an action for injuries sustained in a crossing accident, a count alleging a failure to blow the whistle as required by 18 *Del. Laws, c.* 685, § 1, which provides that it shall not apply to the City of Wilmington, sufficiently showed that such crossing was not in Wilmington, which is in New Castle County, where it is specifically alleged that the crossing was located in Sussex County.

9. RAILROADS—CROSSING ACCIDENTS—ACTIONS—DECLARATION.

In an action for injuries sustained in a crossing accident, a count alleging in general terms that the crossing was a dangerous one, and further alleging that defendant negligently and carelessly propelled a locomotive and train at a great rate of speed over such crossing, without giving due and timely notice or warning of its approach, was not demurrable for failure to set forth the kind and nature of the warning which defendant failed to give since, there being no allegation of circumstances and conditions showing the crossing to be a highly dangerous one, the company was only required to exercise the care and caution required at ordinary grade crossings, and the warning required was neither so complicated nor so varied in its performance as to require a more specific allegation as to defendant's negligence.

10. RAILROADS—CROSSING ACCIDENTS—ACTIONS—DECLARATION.

In an action for injuries sustained in a crossing accident, where it is sought to predicate negligence on the failure to exercise the high degree of care and caution required at peculiarly dangerous crossings, the circumstances and conditions causing it to be a particularly dangerous crossing must be alleged in detail.

(*June* 29, 1914.)

Judges WOOLLEY and RICE sitting.

*Ruby R. Vale* of Philadelphia, Pa., and *White and Tunnell* of Georgetown, for plaintiff Roberts.

*Daniel J. Layton, Jr.,* of Georgetown, and *Caleb E. Burchenal,* of Wilmington, for other plaintiffs.

*Charles S. Richards* for the defendant.

Superior Court, Sussex County, June Term, 1914.

Three SUMMONS CASES (Nos. 11, 33 and 34 respectively, February Term, 1914) designated as the Lofland's Brickyard Crossing Cases, by Evans Roberts, by David B. Nailor's administrators, and by Mary A. Nailor, widow, respectively, against the Maryland, Delaware and Virginia Railway Company

· On demurrers to the several declarations. Sustained as to some of the counts, and overruled as to others. The facts and questions of law presented appear in the opinion of the court.

RICE, J., delivering the opinion of the court:

The first action was brought by Evans Roberts, the plaintiff, against the defendant company, to recover damages resulting from a collision of an automobile, driven by David B. Nailor, in which the plaintiff was riding as a passenger, and a train operated by the defendant company, the collision having occurred at a point in Sussex County, known as Lofland's Brickyard Crossing.

· The narr consists of seven counts, and to each count the defendant has demurred, either generally or specially.

[1] The first count substantially alleges that the defendant company was engaged in the business of operating a railroad between the Town of Lewes and the Town of Milton in Sussex County, Delaware; that the railroad crossed the public road at grade, the crossing being a most dangerous one, for the reason that the public road going north approached the railroad at an angle, and a high bank upon which corn was growing obstructed the view of travelers on the highway going north from seeing trains on the railroad going west; that it was defendant's duty to give due and timely notice and warning of the approach of its trains to said crossing by sounding the whistle attached to the locomotive drawing the train. The plaintiff alleges that the defendant failed to perform its duty in this respect, and by reason thereof the plaintiff was damaged, etc.

To the count the defendant demurs, and contends that, in addition to the averment of failure to give warning to the plaintiff by blowing a whistle, it is necessary for the plaintiff to further aver that at the time no other warning was given of the approach of the train to the crossing.

As we understand the pleading, .the plaintiff declares that it was the duty of the defendant to give plaintiff due and timely notice of the approach of its trains to the said crossing, and alleges that the defendant failed in its duty in this respect, and particularizes the failure by stating that it failed to signal the approach of the train by blowing the whistle attached to the locomotive. It will thus be seen that the plaintiff has negatived any other warning by the defendant of the approach of the train by alleging that due and timely notice was not given, and the rules of pleading do not require him to further set forth that he was not warned by a bell or some other signal. We are of opinion that the allegation by the plaintiff that it was the plaintiff's duty to give due and timely notice and at the same time disclosing the particular way in which it failed in this duty is sufficient, and that it is not necessary for the plaintiff to negative warning by any or all other methods by special reference thereto. The demurrer therefore fails and we sustain the first count.

[2]   The assigned cause of demurrer to the second count is that the following language is vague and uncertain of meaning:

"And because of the premises it was not then and there possible for the driver of an automobile approaching said railroad crossing, or a locomotive from the east, either one to see the other until the driver of the automobile had approached within a very few feet of the said crossing."

Evidently the plaintiff has intended to charge that it was not possible for the driver of an automobile approaching the said public road from the south and an engineer on a locomotive engine approaching said railroad crossing from the east either one to see the other until the driver had approached within a few feet of said crossing; but if such was the intention of the plaintiff, he has failed to use the proper language to give expression to this thought. As the count stands it is impossible to say from which direction the traveler on the highway was approaching the railroad crossing, when it was impossible for the engineer on the locomotive from the east and the traveler each to see the other. The traveler may have been approaching from the north or the south. If it was, when the approach was made from the north, that it was impossible for the traveler and engineer, as

stated, each to see the other, it is not pertinent under the plead-
ings in this case; and if they were unable to see each other when
the approach was made from the south, then the company is
entitled to be so informed. The statement as pleaded is not
sufficiently definite to inform the defendant with that which it is
charged concerning the conditions surrounding the place of the
collision. The demurrer to the second count is sustained.

The language employed by the plaintiff in the third and fourth
counts, and demurred to, is substantially the same as in the sec-
ond count, and for the reason stated in holding the second count
insufficient, we sustain the demurrers to the third and fourth
counts.

[3]   In the fifth count, the plaintiff states that:

"It was the duty of the said defendant to provide a flagman at said
crossing to warn all persons being about to cross said railroad at said Lofland's
Brickyard Crossing of the approach of all trains of said defendant company
thereto."

It is thereupon charged that:

"The said company negligently failed to provide a flagman at the said
railroad crossing to warn all persons being about to cross said railroad cross-
ing   *   *   *   of the approach of all trains of the said defendant company
thereto."

The defendant assigns as cause of demurrer to this count
that there was no duty imposed on the defendant to station a
flagman at the crossing in question. The question for the court's
consideration and determination, therefore, is whether there is
a duty, imposed by law, on railroad companies to station flagmen
at railroad crossings where the view of travelers on the highway
is obstructed from seeing an approaching train.

We accept as a principle of law so well settled as to be beyond
dispute that a railroad company, in the absence of statute requir-
ing it, is not obliged to keep a flagman at every crossing of the
railroad and a public road. Controversies respecting the duty
of a railroad to maintain a flagman arise only when the crossing
is a peculiarly dangerous one.

[4]   It is also well established by innumerable authorities
that at some crossings other warnings in addition to the statutory

warnings will be required of a railroad under peculiar circumstances or on extraordinary occasions. A railroad company is required to operate its trains with the care and prudence which the peculiar circumstances of the place reasonably require. This is the rule of the common law and is also the law in this state.

In *MacFeat's Adm'r v. P., B. & W. R. R.*, 5 *Penn.* 52, 62 *Atl.* 898, the court said:

"It is the duty of a railroad company to give timely and sufficient warning, by bell, whistle or otherwise, of the approach of trains, and to run its trains at a rate of speed proper and reasonable under the circumstances; and if the defendant failed to make use of such usual and appropriate means to warn the deceased at the time and place of the accident, it would be negligence on its part. * * * "

[5] A railroad crossing ordinarily is a place of great danger, and if at the crossing there are obstructions of such a nature that a traveler on the highway approaching the crossing is prevented from seeing an approaching train, or if the peculiar conditions surrounding the crossing are of a nature that a traveler using due care and caution likewise is prevented from hearing the blowing of a whistle on the approaching locomotive, the danger of the crossing is increased, and the degree of care on the part of the railroad to warn travelers on the highway of the approach of trains is correspondingly increased. *Knopf v. P., B. & W. R. R.*, 2 *Penn.* 393, 46 *Atl.* 747; *P., B. & W. R. R. v. Buchanan*, 2 *Boyce*, 243, 78 *Atl.* 776; *Trimble v. P., B. & W. R. R.* (1913), 4 *Boyce* 519, 89 *Atl.* 390.

With reference to the degree of care required of railroads at crossings, the court in *Central Passenger Railway Co. v. Kuhn*, 86 *Ky.* 578, 6 *S. W.* 441, 9 *Am. St. Rep.* 309, said:

"The doctrine with reference to injuries to those crossing the track of a railway, where the right to cross exists, is that the company must use such reasonable care and precaution as ordinary prudence would indicate. This vigilance and care must be greater at crossings in a populous town or city than at ordinary crossings in the country; so what is reasonable care and prudence must depend on the facts of each case."

In *Grippen v. N. Y. Central*, 40 *N. Y.* 34, the court used the following language:

"The greater the circumstances of difficulty in avoiding the train, in hearing its signals, in seeing its approach (howsoever they arise), the greater caution is devolved upon the railroad company in making that approach."

The authorities are uniform in requiring railroads to use reasonable care and diligence and give such warning as the dangers of a crossing demand, and this in addition to the statutory requirements. Much confusion, however, has arisen as to whether due diligence in this respect, under peculiar circumstances, imposes on the company the legal duty of placing a flagman at the crossing, or whether under the circumstances the absence of a flagman is only evidence of the company's failure to perform its duty of giving due and timely notice of the approach of its trains.

In support of the first doctrine the plaintiff cited the case of *English v. Southern Pacific Co.*, 13 *Utah*, 407, 45 *Pac.* 47, 35 *L. R. A.* 155, 57 *Am. St. Rep.* 772, in which case the court said:

"It is clear that, while the statutes of Utah make some provision for the safety of the public while crossing tracks when crossing over the public thoroughfares in thickly settled communities or cities, yet these statutes will not relieve the railroad company from adopting such other reasonable measures for the public safety as common prudence may dictate, considering the danger, locality, travel, and surrounding circumstances of the case. The reason of such rule is founded in the common law that every one must so conduct himself and use his own property as that, under ordinary circumstances, he will not injure another in any way, if such injury can reasonably be avoided by the use of reasonable care. The vigilance and care to be used would be much greater at public crossings in populous cities and towns, where many tracks are built across the streets, and are constantly in use, than the ordinary road crossings in the country, or less populous and less used localities; so that the reasonable care and prudence to be used must depend upon the facts of each case. In the crossing of this particular street, where the travel is shown to be great, and the danger in crossing to be greater, we are of the opinion that reasonable care and prudence would require that a flagman be kept constantly at the crossing during the time that trains continue to cross over it, or that gates should be erected and controlled so as to lessen the danger of injury to passengers and travelers, and thus lessen the danger caused by the almost constant use of the tracks by the defendants and their trains. And, while this is true of this particular crossing, we are not of the opinion that these precautions should be observed by railroad companies in country districts, cities, or smaller localities, where but few persons pass each day, and where the probable danger would be much lessened."

The doctrine, as stated in the *Utah case*, while accepted in a few jurisdictions, is not generally approved by the courts of this country. The greater weight of authority accepts the doctrine

that the failure of a railroad company to maintain a flagman at a peculiarly dangerous crossing is only evidence of negligence on the part of the company.

In *Grand Trunk Railway, v. Ives*, 144 *U. S.* 408, 12 *Sup. Ct.* 679, 36 *L. Ed.* 485, it was said by Justice Lamar:

"As a general rule, it may be said that whether ordinary care or reasonable prudence requires a railroad company to keep a flagman stationed at a crossing that is especially dangerous is a question of fact for a jury to determine under all the circumstances of the case, and that the omission to station a flagman at a dangerous crossing may be taken into account as evidence of negligence.  *  *  *  "

In *Barnum v. Grand Trunk Western Railroad Co.*, 148 *Mich.* 370, 111 *N. W.* 1036, the court said:

"It is not ordinarily negligence to neglect to have a flagman at a crossing in the absence of an order from the commissioner of railroads, and yet circumstances of the particular case may be such that the absence of a flagman may be evidence of negligence."

The court in *Seifred v. Penna. R. R. Co.* (appellant), 206 *Pa.* 399, 55 *Atl.* 1061, said:

"On running its trains over a crossing, a railroad company must exercise the care required by all the circumstances, and the failure to perform this duty is negligence. It must adopt and use some means for the protection of those who may be crossing its tracks at their intersection with a public highway. But what particular means shall be used to protect the public when using the crossing with due care is left to the railroad company which operates the road, the law merely demanding and requiring reasonable care in view of all the circumstances."

The statute in this state requires only that the whistle on the locomotive be blown as the train approaches crossings, such as in this case, and we have already stated the rule in this state, based on the common law, requires the company to give timely and sufficient warning to travelers of the approach of its trains to a crossing, and that the degree of care and caution in performing that duty is increased as the hazards of the crossing are increased. It appears that the common-law duty of the railroad company is to give due and timely warning to travelers on the highway, and it does not require the company to station a flagman at the crossing, nor to adopt any particular method of sig-

nals or means of warning the public. The method and means of warning the public, exclusive of statutory warnings, are questions for the company to determine and put into effect in the strict compliance, compelled by law, of its duty in giving timely and sufficient warning of the approach of its trains. The failure on the part of the company to use the common, ordinary, and appropriate methods of warning is an evidential fact relevant to the question whether the company did do what a reasonably prudent and careful person would have done, under all the facts and circumstances, to warn travelers of the impending danger.

We are of the opinion that the failure of a railroad company to station a flagman at a crossing is evidence to be submitted to the jury, upon a proper showing of unusual dangers of the crossing, and by the jury to be considered in determining, under all the circumstances, whether the company was negligent of its duty in giving due and sufficient warning of the approach of its train to the crossing. We believe the following cases in this state to be authorities for this statement of the law: *Parvis v. P., W. & B. R. R. Co.*, 8 *Houst.* 436, 17 *Atl.* 702; *MacFeat's Adm'r v. P., B. & W. R. R.*, 5 *Penn.* 52, 62 *Atl.* 898; *Short v. P., B. & W. R. R. Co.*, 7 *Penn.* 108, 76 *Atl.* 363; *Welch v. B. & O. R. R. Co.*, 7 *Penn.* 140, 76 *Atl.* 50; *P., B. & W. R. R. v. Buchanan*, 2 *Boyce* 243, 78 *Atl.* 776; *Trimble v. P., B. & W. R. R.* (1913), 4 *Boyce* 519, 89 *Atl.* 390.

It will be noticed in the present pleading that the plaintiff avers, and asks the court to hold as a matter of law, that it was the *duty* of the defendant *to provide a flagman* at the crossing, and maintains that the collision was caused by the defendant's failure to perform its duty in this respect, and that it is not averred that the duty of the defendant was to give timely and sufficient warning, and that the violation of that duty consisted in the defendant's failure to station a flagman at the crossing. This difference under the principles of pleading recognized in this state and the law concerning negligence is most material. If we were to hold as a matter of law that it was the duty of the defendant to place a flagman at the crossing, then a failure in this duty would be negligence *per se*, notwithstanding the company might

have used other and more appropriate and quite sufficient means of warning the public. But if the negligence averred had been that the defendant failed in the performance of its duty to give due and timely warning in that it did not station a flagman at the crossing, then proof of the absence of a flagman would not establish negligence *per se* on the part of the defendant, but would only be an evidential fact to be considered by the jury in determining whether the defendant neglected its duty to give timely and sufficient warning, and would let the defendant into a defense that it gave timely and sufficient warning otherwise than by a flagman.

As we have determined that the law in the absence of statute imposes no duty on the part of a railroad company to station a flagman at a crossing of a railroad and a public highway, even when the crossing is a peculiarly dangerous one, it necessarily follows that the count in this case which charges such a duty to the defendant is faulty and cannot be sustained on demurrer. We therefore sustain the demurrer to the fifth count.

[6] The sixth count avers that it was the duty of the defendant company to provide a bridge across and over the railroad at Lofland's Brickyard Crossing, and the defendant is charged with negligence in failing to fulfill that duty.

The defendant denies the existence of such a duty and claims that the failure to have a bridge at the crossing was not an act of negligence.

At the argument it was admitted by counsel for the plaintiff that no statute of this state, either general or special, requires the maintenance of a bridge at Lofland's Brickyard Crossing, and as we know of no principle of common law which obliges railroads to erect bridges over grade crossings, we hold that the count does not set forth a statement of facts which, if proved, would establish in law a right of recovery against the defendant on the part of the plaintiff. We sustain the demurrer to the sixth count.

[7] In the seventh count the defendant's averred duty in which it is claimed to have failed was the placing of a signboard indicating the dangers of the crossing to travelers.

We find the law in respect to signboards to be much the same as we have, previously in this opinion, held it to be concerning flagmen; and as we have already dealt at some length with that question, we think it neither necessary nor practicable now to restate the law on the subject. For the same reasons the court assigned in sustaining the demurrer to the fifth count, we hold the demurrer to the seventh count to be well taken.

The two other actions were brought, one by Mary A. Nailor, widow, and the other by the administrators, to recover damages for the death of David B. Nailor, occasioned by a collision of an automobile owned and driven by David B. Nailor, the deceased, and a locomotive operated by the defendant railroad company at Lofland's Brickyard Crossing, in Sussex County. The collision is alleged to have been caused by the defendant's negligence.

Originally each of the narrs contained six counts, but counsel for the plaintiffs withdrew the fifth and sixth counts.

Counsel for the defendant demurred either generally or specially to each of the four remaining counts in both narrs.

The conditions surrounding the crossing and the allegations of defendant's duty and negligence in the four counts of the narrs under consideration are stated in identical language, and we will in this opinion refer to one case only, but our rulings are to both cases.

The question raised by the demurrer to the first count is the same as was raised by the demurrer to the first count of the narr filed in the action brought by Evans Roberts against the same defendant, and above considered by the court. For the reasons there stated we overrule the demurrer.

[8] That the defendant failed to blow the whistle attached to the locomotive in the manner required by *Section* 1, *Chapter* 685, *Volume* 18, *Laws of Delaware*, is the act of negligence charged against it in the second count.

The cause of demurrer is stated to be the failure of the plaintiff to specifically aver that Lofland's Brickyard Crossing is not located in the City of Wilmington, as the provisions of *section* 1, by proviso, do not apply to crossings in that city.

This objection must fail, for it is averred with clearness and certainty in the pleading that the crossing in question is located at a point in Sussex County between the Towns of Lewes and Milton, which averment sufficiently negatives any possibility of its being located in Wilmington, which is in New Castle County.

[9, 10]  In the third count the plaintiff in general terms alleges the crossing to be a dangerous one and further alleges that the defendant—

"did  *  *  *  negligently and carelessly drive and propel a certain loco-
motive and train of cars  *  *  *  at a great rate of speed over and across
a public road  *  *  *  without giving due and timely notice or warning
of the approach of the steam locomotive thereto."

To this count the defendant demurs specially, contending that it is necessary for the plaintiff to set forth the kind and nature of the warning which the defendant failed to give.

The averment that the defendant carelessly and negligently propelled its locomotive, in that due and timely warning was not given of its approach to Lofland's Brickyard Crossing, a dangerous grade crossing, discloses the negligence imputed, and charges the defendant with the duty to give warning which is neither so complicated, nor so·varied in its performance, that the defendant is not informed of the act of negligence with which it is charged. Under the pleading, the defendant's duty was only to exercise that degree of care and caution which the law compels it to use at ordinary grade crossings in the country, notwithstanding that the crossing is alleged to be a dangerous one.  To claim that the company did not exercise that high degree of care and caution which the law requires of it at peculiarly dangerous crossings, then the plaintiff must plead, sufficiently in detail to inform the plaintiff of the high degree of care and caution expected of it, those circumstances and conditions that cause the crossing to be a particularly dangerous one.

We are of the opinion that the pleading does acquaint the defendant of the facts it is called upon to meet in preparing its defense, with the sufficiency and particularity required under our rules of pleading as stated in the following cases: *Campbell v. Walker*, 1 *Boyce*, 580, 76 *Atl.* 475; *Loteman v. People's Ry. Co.*,

11

1 *Boyce*, 588, 77 *Atl.* 772; *Hunter's Adm'r v. P., B. & W. R. R. Co.*, 1 *Boyce*, 5, 75 *Atl.* 962. The demurrer to the third count is overruled.

The defendant's failure to give due and timely warning by ringing a bell attached to the locomotive is the allegation in the fourth count. The demurrer to this count presents the same question of law raised by the demurrer to the first count, and, for the reason there stated, we overrule the demurrer.