Gerald James DIMENCO, a minor, by Vincenzo Dimenco, his next friend,

and

Vincenzo Dimenco, Plaintiffs,

v.

The PENNSYLVANIA RAILROAD COMPANY, a corporation of the State of Pennsylvania, Defendant.

Civ. A. No. 1600.

United States District Court
D. Delaware.

April 11, 1958.

See also 19 F.R.D. 499.

Motion for judgment under Rule 50 (b), Fed.Rules Civ.Proc. 28 U.S.C.A., denied.

The physical location of the accident is so complicated that the following simplified sketch is indicated.

From the evidence, a jury might reasonably find the following facts: Gerald Dimenco, the plaintiff, a few days short of his tenth birthday, was riding his bicycle north along Young St., before its intersection with 9th St. He lived within a block of the above depicted crossing and had been crossing it four times or more a day for nearly four years. It was broad daylight and the weather clear. He crossed the switching track somewhat ahead of a switching engine which followed around back of him across Young St. Also behind him, although he was apparently unaware of it, was a passenger train coming from his left rear along the main tracks. As he approached that point in Young Street preparatory to swinging left across the main tracks, the alarm bells on each side of the tracks were clanging, the horns or whistles of the two trains were blowing, the noise of the switch engine was loud and a watchman stationed in the middle of the west side of 9th St., more or less facing plaintiff, was blowing his warning whistle. The din was terrific. Plaintiff was seen to be observing the switch engine to his right rear. The engineer of the passenger train saw him but, thinking he would stop before crossing the main tracks, did not slow down until the last moment when plaintiff wheeled onto the tracks. The passenger train approached around a sharp bend and may have been partially blocked from view, at least for a while, by a passenger shed to plaintiff's left rear. As plaintiff

swung left to cross the tracks, he neither looked and saw the watchman facing him gesticulating to make him stop nor did he look over his left shoulder and see the passenger train which was almost upon him. He crossed the track in front of the train which applied its emergency brakes but could not avoid colliding with him. The train traveled approximately 150 feet after the collision before it could be stopped.

Albert L. Simon and Samuel R. Russell, Wilmington, Del., for plaintiffs.

John P. Sinclair (of Barl, Potter & Anderson), Wilmington, Del., for defendant.

LAYTON, District Judge.

At the trial, defendant moved for a directed verdict which was denied. The jury could not agree. After it was discharged, defendant filed this motion for a judgment in its favor pursuant to Rule 50(b), Fed.Rules Civ.Proc. 28 U.S.C. There are two main grounds for this motion; first, that defendant was guilty of no negligence or, in the alternative, that plaintiff was guilty of contributory negligence. The motion also assigns as error the fact that the Court submitted the issue of the last clear chance to the jury.

There were three types of warning at the crossing just described, the familiar "Stop, Look & Listen" signs on either side of 9th St., where the tracks crossed, warning bells at the same locations, and a watchman who stood in the middle of 9th St., immediately to the west of the tracks.[1] Defendant takes the position that it had erected all adequate warnings required by the exigencies of the physical location of the crossing. Plaintiff replies that because it is an inherently dangerous crossing, something more than the existing warnings was required.

In this connection, our Courts have spoken on several occasions. Roberts v. Maryland, Delaware & Virginia R. Co., 5 Boyce 150, 28 Del. 150, 91 A. 285; Gray v. Pennsylvania R. Co., 3 W.W.Harr. 450, 33 Del. 450, 139 A. 66; Reed v. Queen Anne's R. Co., 4 Pennewill, Del., 413, 57 A. 529, 531. A typical statement of the law may be found in the Reed case where it was said:

"When railroad trains are approaching such crossings, it is the duty of the company to give due and timely warning of such approach, so that travelers * * * may have reasonable notice thereof. It is further their duty to regulate the speed of the cars according to the danger. If the crossing be in a thickly populated * * * locality, or if the view of the crossing be obstructed, or exceptionally dangerous from any cause, it is the duty of the company to exercise greater care and caution, proportioned in every case to the danger * * *."

And in the Roberts case [28 Del. 150, 91 A. 287], the following pertinent language is to be found:

" * * * or if the peculiar conditions surrounding the crossing are of a nature that a traveler using due care and caution likewise is prevented from hearing the blowing of a whistle on the approaching locomotive, the danger of the crossing is increased, and the degree of care on the part of the railroad to warn travelers * * * is correspondingly increased."

A somewhat similar thought was expressed by Chief Justice Layton in Leedom v. Pennsylvania R. Co., 3 Terry 186, 42 Del. 186, 29 A.2d 171, 173, where he stated:

"At ordinary grade crossings, the sounding of the whistle, or perhaps, the ringing of the bell, may be a sufficient warning. At peculiarly dangerous crossings, some more efficient means of warning, or even an obstruction to passage, might be necessary."

[1]. It is not charged here that the defendant failed to provide any warning required by statute. See 17 Del.C.1953, §§ 705 and 710, and 26 Del.C.1953, § 708.

And the language of the Court in Gray v. Pennsylvania R. Co., 3 W.W.Harr. 450, 33 Del. 450, 139 A. 66, 75, is particularly appropriate to the facts of this case:

"If there existed at the crossing in question, at the time of the accident, unusual dangers to persons approaching on the highway, it was the duty of the company to maintain at the crossing such means and agencies for the avoidance or prevention of injury as were reasonably required by the unusual situation. A railroad crossing, as we have said, is regarded as a place of danger, and particularly so if it is in a city or populous town, where existing conditions may make the crossing unusually dangerous. It is for the jury to say whether the crossing in question was such a crossing. *The Court cannot say, as a matter of law, what particular means or agencies the company should employ in such case to notify persons approaching the crossing of the danger there existing,* but we say it is the duty of the company to employ such means or agencies as are reasonably necessary to give timely and sufficient notice. What are the particular means or agencies that should be employed, and whether they have been employed, *are questions for the jury to determine from all the evidence.*" (My emphasis.)

■ Now, it can be argued with a great deal of force here that the defendant had given reasonable warnings of the approach of its trains. There are warning signs, warning bells and, to those who would only look, there is the watchman. To this could be added the bells and whistles of the locomotives themselves and the very fact of the existence of tracks has been held to be a warning of danger. Reed v. Queen Anne's R. Co., supra. But, in reply, plaintiff points out that there are no warning signs facing a person going north on Young Street, and the noise of the defendant's locomotives and cars serves to a great degree to drown out the warning bells at the crossing. Moreover, to the pedestrian going north on Young Street, there is the possibility that the presence of the switch engine may tend to draw attention away from a northbound train on the main tracks, and it seems evident that the view of such a train is, to some extent at least, obstructed by a passenger shed. Why the presence of the watchman should not supply any possible deficiency in defendant's warning system is hard to answer. Nevertheless, after careful consideration, and bearing in mind not only the state of the Delaware law but also the complicated nature of the crossing in question, I conclude that the question of the adequacy of the warning system is one for a jury.

Defendant insists, in the alternative, that the circumstances of this case call for a decision that, as a matter of law, plaintiff was contributorily negligent. It argues, not without merit, that the child had been using the crossing four or five times a day for four years; that he must have been aware of its danger and have been admonished over and over again not to cross tracks without looking carefully beforehand, and that doing what he did was negligence despite his relative immature years.

However, the Delaware authorities do not bear out this contention. In Travers v. Hartman, 5 Boyce 302, 28 Del. 302, 92 A. 855, 857, the Court charged the jury in part as follows:

"The law presumes as a general rule that an infant, after reaching the age of 14 years, has sufficient discretion and understanding to be responsible for his wrongs, to be sensible of danger and have power to avoid it, and this presumption exists until it is rebutted by evidence to the satisfaction of the jury."

\* \* \* \* \* \*

"In determining the question whether the infant plaintiff was himself guilty of contributory negligence, you are to consider whether he was exercising that degree of care and caution which a reasonably prudent person of his age, general

development and maturity would exercise under like circumstances. While the rule as to contributory negligence is modified in favor of children, nevertheless it is the duty of children to exercise that degree of care to avoid injuries which children of the same age are accustomed to exercise in like circumstances, and the maturity and capacity of the infant, his ability to understand and appreciate the danger, and his familiarity with the surroundings in each particular case, are all matters to be taken into consideration * * *."

■■ Cases may be found where a child of nine years of age was held guilty of contributory negligence as a matter of law. Anderson v. Central R. Co. of N. J., 1902, 68 N.J.L. 269, 53 A. 391. But the better view seems to be that a child of approximately nine years of age is responsible for the exercise of such care as might reasonably be expected of one of his age and capacity, and his failure to exercise such degree of care constitutes negligence. Annotation, 107 A. L.R. 4, 131. Again, it is my view that the question of plaintiff's contributory negligence was properly submitted to the jury.

■■ Finally, defendant assigns as error the submission by the trial Judge to the jury of the question of last clear chance. Defendant argues that inasmuch as plaintiff's original negligence was active until the very moment of collision, the doctrine of last clear chance is not applicable under the Delaware decisions. There is no merit to this contention. Lord v. Poore, 1954, 9 Terry 595, 48 Del. 595, 108 A.2d 366 took pains to point out that the fact that plaintiff's negligence was operating up to the very moment of the accident was no bar to the application of the doctrine providing defendant was actually, rather than constructively, aware of the negligence.

Nor, in a case such as this, can the defendant be heard to say that its engineer was entitled to assume until the last possible moment that the plaintiff, a child, would either see the approach of the train or see the watchman's warning and stop. As said in 65 C.J.S. Negligence § 12b, page 400:

"b. Immaturity

"The fact that children cannot and do not ordinarily exercise the same degree of prudence and care for their own safety as adults imposes on those by whose acts or omissions a child may be injured the obligation of exercising more vigilance and caution than might be sufficient with respect to an adult."

Compare Brown v. City of Wilmington, 4 Boyce 492, 27 Del. 492, 90 A. 44, where it was held that a person obviously under the influence of drink was entitled to the same special consideration as a child.

Here, defendant's engineer was in the position to, and did, observe not only that the plaintiff was a child but also his surroundings and his inattentiveness to the mounting peril behind him, but rather than apply his brakes at a time when the impending accident might well have been avoided, he contented himself with blowing his whistle. I conclude that the doctrine of last clear chance is applicable to this case.

Defendant's motion for judgment is denied and an Order will be entered on notice.