ROBERT L. BUCHANAN *vs.* PHILADELPHIA, BALTIMORE AND WASH-INGTON RAILROAD COMPANY, a corporation of the State of Delaware.

*Railroad Crossing—Operation of Trains—Right to use Crossing—*
*Mutual Duty of Company and Traveler—Obstructions to View*
*of Crossing—Degree of Care Required—Duty to Blow*
*Whistle—Statute—Negligence per se—Mutual Negli-*
*gence—Traveler to Look and Listen—Senses of*
*Sight and Hearing—Negligence—Definition*
*—Presumptions—Burden of Proof—Con-*
*tributory Negligence—Conflicting Testi-*
*mony—Personal Injuries—Injuries*
*to Property—Measure of*
*Damages.*

1. Evidence that the railroad "that goes along there where you were hurt" was known as the "Philadelphia, Baltimore and Washington," with other evidence in the case, sufficiently connects the defendant with the operation of the train which collided with the plaintiff's team.

2.   Whether contributory negligence should be found by the Court from the testimony, when the plaintiff rests, as a conclusion of law, or the question should be submitted to the jury, under all the evidence, must be controlled by the character of the evidence in the particular case.

3.   The question whether the plaintiff was, at the time of the accident, in the exercise of reasonable care, was submitted to the jury, to be determined by them under the evidence and charge of the Court.

4.   The jury are the sole and exclusive judges of the testimony both as to its weight and value.

5.   The right of a railroad company in the use of its tracks and the right of the public in the use of a highway, where the railroad crosses the highway, must be exercised by each with due regard to the right of the other, and in a reasonable and careful manner, so as to prevent accidents at such crossings.

6.   A person upon a highway and approaching a railroad crossing with which he is familiar is bound to avail himself of his knowledge of the locality and act accordingly

7.   If a person, approaching a railroad crossing, goes upon it, without, at least, looking and listening to ascertain whether a train is near, and by reason thereof he is injured by a passing train, which he, by the exercise of ordinary care and prudence, could have prevented, he cannot recover for such injury.

8.   Where the view of a railroad crossing is obstructed, a greater degree of care is required than where there is no obstruction.

9.   A railroad company is required to exercise reasonable care and diligence in the movement of its trains across a public highway, and to warn  travelers upon such highway of the approach of its trains, in order to prevent accidents at such crossings.

10.   If there are obstructions in and about the crossing of a public highway which prevent  travelers thereon from seeing a train of cars as it approaches the crossing, the degree of care required of both the railroad company and of the traveler is increased according  to the liability of danger at such crossing.

11.   Both the  traveler and the railroad company are charged with the same degree of care in approaching a public crossing—the one to avoid being injured, and the other to avoid inflicting injury.

12.   The degree of care required in the management of railroad engines and cars in motion, is such care, circumspection, prudence and discretion which the peculiar circumstances of the place or occasion reasonably require.

13.   The degree of care and diligence which the traveler, upon a public highway, is required to exercise must be in proportion to the danger

to be avoided; that is, he is bound to use such care and diligence as a reasonably prudent man would, under the peculiar circumstances of the case, exercise to prevent injury to himself.

14.   A failure to blow the whistle of the engine, on approaching a public crossing, as required by the statute, would constitute negligence *per se*, but such failure would not relieve the traveler from the exercise of due and reasonable care, in approaching the crossing.

15.   If there was a failure to make use of the warning required by the statute and an accident occurred by reason thereof, the railroad company would be liable therefor, if the traveler did not by his own negligence contribute thereto.

16.   Though the railroad company may have been negligent, yet if the negligence of the traveler contributed to or entered into the cause of his injury, the traveler would be guilty of contributory negligence and he cannot recover.

17.   When there is mutual negligence, and the negligence of each is operative at the time of an accident, no recovery can be had for damages for resulting injuries.

18.   A railroad crossing is a place of danger. The very presence of such a crossing is notice to a person, approaching or attempting to cross it, of the danger of colliding with a passing engine or train.

19.   Because a railroad crossing is a place of danger, there is imposed upon the traveler on the highway the duty of reasonable care and caution and the use of his senses of sight and hearing for his own and others' safety and protection.

20.   A traveler on the highway is required at least to look and listen for an approaching engine or train before venturing to cross the track, and if he fails to exercise reasonable care, he incurs the peril of whatever danger he could have thereby discovered and avoided, and for any injury by reason of such fault, he is without remedy therefor.

21.   Negligence is never presumed. It must be proved, and the burden of proving it rests upon the plaintiff.

22.   Negligence is defined to be a failure to observe for the protection of the interests of another, that degree of care and vigilance which the circumstances justly demand.

23.   There is no presumption of negligence either on the part of the plaintiff or defendant from the mere fact of a collision.

24.   Whether there was negligence on the part of any one at the time of a collision, and whose, must be determined from the evidence in the particular case.

25.   When testimony is conflicting, the jury should reconcile it if they can; but if they cannot do so, they should accept as true that part of it which they deem worthy of credit, and reject that which they deem unworthy of credit, having due regard to the opportunity and capacity of

the witnesses to know of that of which they testified, and their apparent fairness or bias, if any.

26.   The verdict of the jury should be for that party in whose favor there is the preponderance, or greater weight, of the evidence.   The measure of damages for injuries to property and for personal injuries received by a traveller at a railroad crossing is such a sum as the jury may conclude from the evidence to be an adequate compensation for the value of the horse and for injuries to the wagon; also for plaintiff's pain and suffering of mind and body, loss of bodily and mental powers, inability to perform labor and incapacity to earn money, in the past or in the future, which are the immediate and necessary consequences of the injuries sustained by him.   And if the injuries are, in the judgment of the jury, in view of all the evidence, of a permanent character, the jury should consider that fact, in determining the amount of his damages.

(*November* 24, 1909.)

Judges BOYCE and WOOLLEY sitting.

*Albert Constable* and *Anthony Higgins* for plaintiff.

*Andrew C. Gray* and *John F. Neary* for defendant.

Superior Court, New Castle County, November Term, 1909.

ACTION ON THE CASE (No. 84, March Term, 1909), brought by the plaintiff, Robert L. Buchanan, to recover damages for personal injuries and for the death of his horse and for injuries to his wagon, occasioned, as alleged, by the negligence of the defendant.

Verdict and judgment for plaintiff.   Writ of Error sued out of the Supreme Court by defendant.

At the trial, the plaintiff testified as to the facts and circumstances leading up to the accident.

At the close of the testimony for the plaintiff, counsel for the defendant moved for a nonsuit, basing his reasons therefor as set out in the following opinion of the Court:

BOYCE, J., delivering the opinion of the Court:

Counsel for the defendant moved for a nonsuit  when the plaintiff had closed his case, upon two grounds:

(1)   That the plaintiff had failed to connect the defendant company with the alleged accident.

(2)   That, as shown by the evidence, the plaintiff was guilty of contributory negligence.

The stenographic notes disclose that the plaintiff was recalled immediately before the case was closed, and gave the following testimony:

"Q.   What is the railroad known as, that goes along there where you were hurt?   A.   The Pennsylvania, Baltimore and Washington.

"Q.   What division were you hurt on?   A.   The Delaware Division.

"Q.   Did you say the Pennsylvania?   A.   Yes, sir.   That was a mistake.   It is the Philadelphia, Baltimore and Washington, I meant to say."

We think this, with other testimony in the case, sufficiently connects the defendant company with the operation of the train which it is claimed collided with the horse and wagon of the plaintiff, causing the injuries complained of.

Whether contributory negligence should be found by the Court as a conclusion of law, or the question of such negligence should be submitted to the jury for their determination, under the evidence, must, in every case, be controlled by the facts and circumstances of the particular case.

Whether at the time of the accident complained of, under all the circumstances shown in this case, the plaintiff was or was not in the exercise of due and reasonable care on his part, is a question which, we think, should be left to the jury for their determination, under the charge of the Court upon the law applicable to the case.

The motion for the nonsuit is therefore refused.

The essential part of the plaintiff's testimony, bearing upon the question of his care and caution at the time of the accident, is, in narrative form, as follows:

"I came in by way of Porter's Station, and I had to cross Stewart's crossing.   Stewart's crossing is a crossing of a public

highway.   I reached it about one o'clock in the afternoon.   I was driving one horse and a medium-sized butcher wagon.   The wagon had a white top which projected out like an ordinary covered wagon, with side curtains where the driver sat, but they were up.   From October, the fall before, I had been over the crossing about twice a week, except in the winter, and then about once a week.   As you approach the crossing the railroad is not in fair view all the way down to the crossing.   You lose sight of the railroad back at the apple orchard, which is beyond McMullin's private lane.   South-bound trains are obscured by the apple orchard.   The track which you come to first, crossing from the west, as I was, is the south-bound track.   Beginning at the apple orchard, as you approach the railroad crossing from the west, you can see to the north a train through McMullin's private lane, I suppose, about thirty feet.   You can look through the lane and see the track opposite the barn.   After leaving the barn, the first point you can see a train, crossing from the north, as you are driving from the west, your horse would be about on the track. On the day of the accident, June the second, after I reached the apple orchard, my horse was walking.   After coming to the orchard I got a view of the railroad at McMullin's lane, and I did not see anything and kept on going.   I looked on the other side of the public road you cannot see there either.   There was a hedge there.   It was a high, thick hedge.   I would suppose it was from twenty to twenty-five feet, something like that."

The following question was objected to as irrelevant, but admitted and exception noted:

"Driving down, what could you see to the south on the side on which the hedge was growing—what part of the railroad, if any, could you see after you came to the hedge?   A.   You could see directly in front of you."

*Mr. Gray*, of counsel for the defendant, stated that his objection and exception were intended to cover all questions asked respecting the south side of the public road and crossing in question.

"Q.   Could you see anywhere else than directly in front of

Evidence.

you? A. On the right-hand side, do you mean? Q. Yes. A. No, sir; because the hedge shut off the view. It was too thick; you could not see through it."

"After coming to McMullin's lane, when I looked, I walked the horse down until I was just close enough to the track to be safe, and I stopped and looked and listened. It was not more than forty feet from the track. I stayed there just long enough to listen and see that there was nothing coming. I was familiar with the fact that trains ran both ways on different tracks on that railroad. After I had stopped, as I have said, I spoke to the horse and he started to walk, and when I got to where I could see, the train was right there. It was right on me. It was just where the horse stepped to the track; the train was there; just far enough so that I could see. That is all I can say. I gave the horse a sudden jerk with my right hand. The next thing I remember, I looked up and saw a strange man and asked him if he could not take me home. I have made a test since, driving in a wagon from the west towards the railroad track, and I could not see a train coming towards the south from a point five hundred feet from the railroad, because there is the apple orchard along there, and there just opposite the orchard is a big hedge. The apple trees towards the north of you keep the view of the railroad off, all the way along the orchard to the east until you come to McMullin's private lane. After you have passed the lane in a wagon, you are nineteen feet from the first rail of the track when you can see up the railroad track towards Wilmington."

*Clement McMullin*, corroborated by his wife, was produced as a witness on behalf of the plaintiff and testified, that, on the day of the accident, and just before it occurred, he and his wife were standing in their garden or field near the fence adjoining the defendant company's right of way and about six hundred feet north of the crossing where the accident occurred; that he noticed the engineer and the fireman; that the latter was standing on the engine, in the entrance and on same side on which the engineer was sitting; that the engineer was waving his hand when opposite them and continued until he passed the garden;

Evidence—Charge.

that he was facing them as he went by—the opposite way from which the train was going,—with his back towards the crossing, where the accident occurred. That witness looked over the fence and saw when the train threw the horse and wagon to one side; that he did not hear any whistle from the engine, but whether it blew or not he could not say; did not know. The bell was not ringing when it passed; could say that positively. The wife saw the train down towards the woods, and supposed it was a quarter of a mile away and saw it until it passed her; she did not hear any whistle when train passed the whistling post. She did not hear any whistle from the time she first saw the train or any ringing of the bell. She corroborated her husband as to the positions of the fireman and engineer. They were on the side of the engine next to her. The engineer was waving his hand which he continued until he got out of her sight. After he passed, he turned around and was looking back.

The defense consisted of a general denial of plaintiff's testimony.

BOYCE, J., charging the jury:

Gentlemen of the jury:—We decline to instruct you to find for the defendant.

This action was brought by Robert L. Buchanan, the plaintiff, against the Philadelphia, Baltimore and Washington Railroad Company, the defendant, to recover damages for injuries to himself, for the death of his horse and for injury to his wagon, alleged to have been occasioned by the negligence of the defendant company.

The plaintiff in his declaration avers, *first*, that he, in the exercise of due care upon his part, was lawfully passing along a public highway, in this county, in a wagon, on the day of the alleged accident, when by reason of the negligence of the defendant, or its agents, he was struck by one of the defendant's trains of cars, passing over said highway, and was thrown down, wounded and permanently injured, and his horse was killed, and his wagon was badly injured· *second*, that the defendant negligently

and carelessly ran its said train of cars over its line of railroad where the same crosses at grade the said public highway, without giving any warning of the approach of its train to the said crossing, when by reason of such negligence the injuries and loss complained of were occasioned.

It is not controverted that, on the second day of June, A. D. 1908, the horse and wagon, driven by the plaintiff, were going easterly on a public highway, and a special freight train of the defendant was going southerly, on the westerly south-bound track of the defendant railroad, when a collision occurred between the horse and the train, at what is known as Stewart's crossing, it being between Porter and Kirkwood stations, in this county.

You have had detailed to you by the several witnesses a description of the land as to its elevation adjacent to the said public highway and the right of way of the defendant company, and also of the location of hedge, trees, crops, structures and the general surroundings of the approach to said crossing, which are claimed to have existed and obstructed the view of the plaintiff from the approach of said train, a considerable distance before reaching the crossing and within twenty feet, as claimed by the plaintiff, or thirty feet, as claimed by the defendant, of the westerly rail of the track upon which said train was moving. We shall not attempt any detailed statement of this testimony, but leave it to your recollection. You are the sole and exclusive judges of the testimony, both as to its weight and value. The Court has nothing whatever to do with the facts of the case as testified to by the witnesses. When you shall have retired to your room, you should weigh and consider the evidence produced before you in connection with the law announced to you by the Court, and render your verdict in accordance therewith.

The plaintiff claims that when approaching the said crossing, his horse was in a walk, and that he himself was in the exercise of due and reasonable care at and before the collision, and that the collision was caused by the negligence of the servants of the defendant in charge of the train as alleged in his declaration. The defendant company, however, claims that its servants were not

guilty of any negligence, such as alleged, which caused the injuries and loss complained of, but contends that the collision was occasioned by the negligence of the plaintiff. The defendant claims that, at the time of the accident, it was in the exercise of due and reasonable care to prevent the accident.

It is not denied that the road on which the plaintiff was driving crossed over the right of way and tracks of the defendant and is a public highway. The defendant company has a right to cross said highway with its tracks and to use its tracks to and over said crossing in the movement and management of its trains. The public have the right to use said highway and to cross over the tracks of the company at said crossing for the ordinary purposes of a public highway. The right of each, however, must be exercised with due regard to the right of the other, and in a reasonable and careful manner, so as to prevent accidents at such crossing. A person approaching a railroad crossing with which he is familiar is bound to avail himself of his knowledge of the locality and act accordingly.

If a person drive up to a railway crossing and upon it, not only without, at least, looking but without listening to ascertain if any cars are approaching, and a collision and injury occurs to him from a passing train, which would have been prevented had the person so injured exercised the proper and ordinary prudence, care and caution mentioned, such person would be guilty of contributory negligence, and could not recover from the railroad company for such injury. When the view at the crossing is obstructed, greater care is necessary than in places where the view is unobstructed. It is likewise the duty of the defendant in the movement of its trains over its tracks across a public highway to exercise reasonable care and diligence to warn travelers upon such highway of the approach of its trains, in order to prevent accidents at such crossings, and if there are obstructions in and about such crossing which prevent a train of cars from being seen as a traveler upon the highway approaches the crossing, the degree of care required is increased according to the liability of danger at such crossing. Both the traveler and the company

are charged with the same degree of care—the one to avoid being injured, and the other to avoid inflicting injury. As was said by the Court in the case of *Knopf vs. P., W. and B. R. R. Co.* 2 *Pennewill* 393, the degree of care and diligence required, when applied to the management of railroad engines and cars in motion must be understood to import all the care, circumspection, prudence and discretion which the peculiar circumstances of the place or occasion reasonably require of the servants of the defendant company, and this will be increased or diminished according as the ordinary liability to danger and accident, and to do injury to others, is increased or diminished in the movement and operation of them. But, on the other hand, it is equally well settled as a principle of law, that the plaintiff was also bound at the same time, to use ordinary prudence, care and diligence to avoid the accident and injury which occurred to him on that occasion, and the care and diligence which he is bound to exercise must be in proportion to the danger to be avoided; that is to say, he is bound to use such care, prudence and diligence as a reasonably prudent man under the peculiar circumstances of the case would exercise to preserve himself from being injured.

A failure on the part of defendant to blow its whistle on approaching a crossing at a public highway, as required by the Act of the Assembly, would constitute negligence on the part of the defendant *per se*, but such failure on the part of the defendant would not relieve the plaintiff from the exercise of reasonable and ordinary care in approaching the crossing; nor would the defendant be liable by reason of such failure if the injuries complained of were caused by the negligence or careless conduct of the plaintiff at the time of the accident. But if the defendant failed to make use of the warning required by the statute at the time of the accident, and if the accident occurred by reason of such failure, then and in that event the defendant would be liable for the injuries complained of, if the plaintiff did not by his own negligence or want of care contribute in some degree thereto; that is to say, even though the defendant company may have been negligent on its part, yet if the negligence of the plaintiff contributed

to or entered into the accident, at the time of the injury, the plaintiff would be guilty of contributory negligence and cannot recover. For where there is mutual negligence, and the negligence of each is operative at the time of accident, no action can be sustained therefor.

It has been held by the courts of this State that the law regards a railroad crossing as a place of danger. The very presence of such a crossing is notice to the person, approaching or attempting to cross it, of the danger of colliding with a passing engine or train. And because of the danger, there is imposed upon such person the duty of reasonable care and caution, and the reasonable and ordinary use and exercise of his senses of sight and hearing for his own and others' safety and protection; and he is required, at least, to look and listen for an approaching engine or train before venturing to cross the track, and, if as it has been said, he fails to exercise such ordinary care, whatever danger he could thereby have discovered and avoided, he incurs the peril thereof if he proceeds, and, for an injury arising under such fault, is left without remedy.

In an action of this kind it is necessary that the plaintiff should both allege and prove negligence on the part of the defendant to entitle him to a recovery. Negligence is never presumed. It must be proved, and the burden of proving it rests upon the plaintiff.

Negligence has been defined to be a failure to observe, for the protection of the interests of another person, that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury.

There is no presumption of negligence, either on the part of the plaintiff or on the part of the defendant, from the mere fact that injury resulted to the plaintiff by the train and team coming into collision. Whether there was any negligence, at the time of the collision, and whose, you must determine from all the facts and circumstances of this case as disclosed to you by the testimony of the witnesses.

If you shall believe from the preponderance of the evidence

Charge.

in this case, that at the time of the accident the servants of the defendant company negligently approached the said crossing with its train, without giving any warning of its approach to said crossing, and that the failure to do so was the proximate cause of the injuries complained of, and that the plaintiff was free from any negligence on his part which contributed thereto, then your verdict should be for the plaintiff; or if you shall believe from the preponderance of the evidence that at the time of the accident the defendant was not in the exercise of due and reasonable care, that is, all the care and circumspection, prudence and discretion that an ordinarily prudent and careful man would have exercised under the circumstances and that the want of such care and caution was the proximate cause of the injuries complained of, and that the plaintiff was free from any negligence on his part which contributed thereto, your verdict should be for the plaintiff. But if you shall believe that it has not been shown by a preponderance of the evidence that the negligence of the defendant was the proximate cause of the injuries complained of, or if you shall believe that the negligence of the plaintiff himself contributed to the injuries complained of, your verdict should be for the defendant.

Where, as in this case, the testimony is conflicting, you should reconcile it if you can, but if you cannot do so, you should accept as true that part of it which you deem worthy of credit, and reject that part of it which you deem unworthy of credit, having due regard to the opportunity and capacity of the witnesses to know of that of which they speak, and their apparent fairness or bias.

Your verdict should be for that party in whose favor is the preponderance or greater weight of the evidence.

If your verdict should be for the plaintiff, you should award him such sum by way of damages, as you may conclude from the evidence to be an adequate compensation for the value of his horse and for injuries to his wagon; also for his pain and suffering of mind and body, loss of bodily and mental powers, inability to perform ordinary labor and incapacity to earn

money, in the past or in the future, which are the immediate and necessary consequences of the injuries sustained by him. If such injuries are in your judgment, in view of all the evidence, of a permanent character, you should consider that fact in determining the amount of his damages.

Verdict for plaintiff for $6,250.