Miriam E. Gray, Administratrix c. t. a. of John G. Gray, late of Wilmington, Delaware, deceased, *vs.* The Pennsylvania Railroad Company, a corporation existing under the Laws of the State of Delaware.

(First Trial, Mar. 30, 1926. Second Trial, Jan. 31, 1927.)

PENNEWILL, C. J., HARRINGTON and RICHARDS, J. J., sitting at the first trial, which resulted in a disagreement of the Jury.

PENNEWILL, C. J., and HARRINGTON, J., sitting at the second trial, which resulted in a verdict for the defendant.

*Charles F. Curley* (of Saulsbury, Curley and Davis) for plaintiff.

*Andrew C. Gray* (of Ward, Gray and Ward) for defendant.

Superior Court for New Castle County, No. 103, May Term, 1925.

RICHARDS, J.   We overrule the objection.   This question is controlled by *Real Estate Trust Co. v. Wilmington & New Castle Electric Ry. Co., et al.,* 9 *Del. Ch.* 99, 77 *A.* 828, which held that one of the solicitors for the complainant might testify that, in accordance with the terms of the mortgage, he gave a written notice demanding the payment of interest and the installments on the sinking fund then due, before starting foreclosure proceedings on such mortgage.[1]

Mr. Townsend, in response to questions by the attorney for the plaintiff, then testified to certain details with respect to the position of the camera when certain pictures, showing the scene of the accident, were taken by a third person, but in his presence.

Etta Gray Jones, a witness produced by the plaintiff at the first trial, was then asked by Mr. Curley:

"Q.   Was John G. Gray familiar with the crossing in question (the Market street crossing at Bridgeville) after dark on November 27th, 1924?"

Mr. Gray, attorney for the defendant, objected to the question, contending that whether John G. Gray was familiar with the crossing in question was the only thing that was material, and that it was improper to add the words "after dark" to the question.

RICHARDS, J.   We think the point is well taken and therefore sustain the objection.

"Q.   Do you know whether John G. Gray, on the night of November 27, 1924, prior to the accident, saw a watchman at that

---

[1] See *Solomon v. Loper*, 4 *Harr.* 189, in which the attorney for the plaintiff offered to testify to certain admissions by the defendant and the Court held that the objection to his testimony was rather to his credit than to his competency.

In *Bush v. McComb*, 2 *Houst.* 546, *Gilpin v. Marley*, 4 *Houst.* 284, *Andrews v. Thompson*, 1 *Houst.* 522, and *Lupton v. Underwood*, 3 *Boyce* 519, 85 *A.* 965, the offer of testimony was excluded as a privileged communication. See, however, *Johnson v. Farmers' Bank*, 1 *Harr.* 118.

crossing (the Market street crossing at Bridgville) whose duty it was to warn travelers of the approach of trains?"

Mr. Gray, attorney for the defendant, objected to the question because it was not confined to the *exact time of the accident* and contended that there was no legal duty on a railroad company to maintain a watchman at a crossing for the full 24 hours of each day because it may have maintained a watchman at such crossing during certain portions of the day.

Mr. Curley, attorney for the plaintiff, contended that if John G. Gray saw a watchman at this crossing at about six p. m., he had the right to assume that there would be a watchman there shortly after ten p. m. on the same night. In support of this contention, he cited: *Martin v. B. & P. R. R. Co.*, 2 *Marv.* 123, 42 *A.* 442; *Hooper v. B. & M. R. R. Co.*, 81 *Me.* 260, 17 *A.* 64; *Woehrle v. Minn. Trans. R. Co.*, 82 *Minn.* 165, 84 *N. W.* 791, 52 *L. R. A.* 348; *Gregg v. Western Pac. R. R. Co.*, 193 *Cal.* 212, 223 *P.* 553; *Corbett v. Hines*, 194 *Iowa* 1344, 191 *N. W.* 179.

PENNEWILL, C. J. As I understand the argument of the attorney for the plaintiff, the question is not whether the company is bound to provide protection all of the time, but whether, when it does provide it part of the time, such evidence as is now offered is admissible to show the degree of care required of the deceased.

RICHARDS, J. We think the witness can answer if she knows. We, therefore, overrule the objection.

"Q. At what time?

"A. Around six o'clock.

"Q. State whether he was in his car or on foot at the time?

"A. In his car.

* * * * * * * * * * * * * * * * * * * *

"Q. State whether, or not, John G. Gray had been signaled by the watchman to stop?

"A. He had."

■ William T. Jones, a witness produced by the defendant, testified as follows:

"By Mr. Gray:

"Q. On November 27, 1924, you were crossing watchman

at Market street in Bridgeville, for the Pennsylvania Railroad, were you not?

"A.  I was.

"Q.  And you went off duty the night of November 27, 1924, at ten o'clock?

"A.  Yes, sir.

"Q.  Did any watchman succeed you?

"A.  No, sir.

"Q.  Was there any watchman there from ten o'clock on, during the night?

"A.  There was not.

"Q.  Had there ever been any watchman there, at that time, after ten o'clock at night?

"Mr. Curley: I object.  The question is not material.  This defendant either had a legal duty to maintain a watchman there or it did not, and it is immaterial whether they absented him deliberately, or whether he absented himself through negligence."

RICHARDS, J.  We overrule the objection.

For the purpose of having the jury draw an inference that the company ordinarily maintained a watchman at this crossing shortly after ten o'clock at night, at which time Mr. Gray was killed, you have offered testimony that there was a watchman there at about six p. m. on the same night.  You have, also, shown that there was no watchman there at the time Mr. Gray met his death.

It is true that this evidence though produced in your primary case, was probably offered, primarily at least for the effect it had on the degree of care required of Mr. Gray, but it also tended to show negligence on the part of the defendant.  This evidence is apparently offered for the purpose of rebutting any such inferences against the defendant and we think it is material for that purpose.

"A.  There had not."

Pursuant to the offer of Curley, attorney for the plaintiff, the Court admitted in evidence, without objection, the depositions of certain witnesses taken in the City of New York.

"Mr. Curley: The depositions are in evidence, but I do not desire to read the whole of them.

"Mr. Gray (Attorney for Defendant): I object unless Mr. Curley reads all of each deposition.

RICHARDS, J. We think the whole of each deposition should be read, and not mere extracts therefrom."

Mr. Curley then read the direct and Mr. Gray read the cross-examination of the witnesses whose testimony was taken on depositions.

■ Immediately after the jury had been charged and had retired to deliberate on the case, Mr. Curley, attorney for the plaintiff, stated that the depositions taken on behalf of the plaintiff, had not been handed to the jury when they retired, and contended that they should be treated like any other exhibits and sent to the jury.

Mr. Gray, attorney for the defendant, contended that the depositions were not exhibits, were not offered as such, and should not be sent to the jury.

RICHARDS, J. We are of the opinion that the depositions read in this case are not exhibits and we know of no practice by which the jury were entitled to take them with them when they retired to deliberate on the case. We, therefore, refuse the application of the plaintiff.

At the second trial, (January 31, 1927) William J. Louder, a witness for the defendant, on recall, testified as follows:
"By Mr. Gray:

"Q. Did you notice whether or not the electric lamps on the station platform were lighted at the time of this accident?

"A. They were not.
"By Mr. Curley:

"XQ. When did you look at these lamps which you now say were not lighted?

"A. When I walked up there, it was real dark, and I noticed that the lights were not burning.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

"XQ. On the occasion of June, 1925, when I was in Bridgeville, do you recall that Mr. Townsend was with me?

"A. Yes; I know there was some gentleman with you.

"XQ. Any conversation I had with you was in his presence, was it?

"A. Yes, sir; I think it was."

At the close of the defendant's case, George L. Townsend, Jr., Esq., an attorney at law, of Wilmington, was recalled in rebuttal, by the plaintiff to detail a conversation between the witness last above referred to and Mr. Curley, attorney for the plaintiff, which took place in his presence, and which it was claimed tended to contradict the testimony of Louder with respect to the lamps on the station platform not being lighted at the time John G. Gray was killed.

Mr. Gray, attorney for the defendant, objected on the ground that Mr. Townsend was associated as counsel and interested in the result of this case, and to permit him to so testify would be contrary to public policy. It would also be going much further than the ruling made with respect to his testimony at the first trial of this case.

PENNEWILL, C. J. We sustain the objection.[2]

### PLAINTIFF'S PRAYERS.

1. Plaintiff claims that the defendant was negligent, first in driving its locomotive over the said Market Street crossing in Bridgeville at a dangerous, reckless, improper and high rate of speed; and second in failing to give such timely and sufficient warning of the approach of its train to the said crossing as the plaintiff charges the dangers of such crossing required.

2. The terms "ordinary care" and "diligence," when applied to the management of railroad engines and cars in motion, must be understood to import all the care, prudence and discretion which the peculiar circumstances of the place or occasion reasonably require of the servants of the defendant company, and this will be increased or diminished as the ordinary liability to danger and accident, and to do injury to others, is increased or diminished in

[2] See *Solomon v. Loper*, 4 *Harr.* 187, where the attorney for the plaintiff was permitted to prove an admission by the defendant. The Court held that the objection merely went to the credit of the witness.

the movement and operation of them. Due care in the case of the company means, ordinarily, the timely employment of sufficient signals or warnings, giving notice of the approach of trains to public places, such as highways or street crossings; and in the case of individuals due care means proper circumspection in looking or listening, or both, when practicable, to avoid collision; and the greater the peril to the individual, the greater the duty of exercising care by the company, and of prudence and caution on the part of the individual. This, after all, is but common sense, the force of which must be evident to all. If the defendant failed to make use of the usual and appropriate means to warn the deceased at the time of the accident, such failure was negligence on its part, and if the accident occurred by reason thereof, it would be liable, provided the deceased did not by his own carelessness contribute in some degree proximately to his injury. *7 Penn.* 111, 112; *Gilpin, C. J., in Patterson v. P., W. & B. R. R.,* 4 *Houst.* 103; *Chief Justice Comegys in Parvis v. P., W. & B. R. R.,* 8 *Houst.* 446, 17 *A.* 702; *Short v. P., B. & W. R. R.,* 7 *Penn.* at bottom page 111 and page 112, 76 *A.* 363; *Trimble v. P., B. & W. R. R.,* 4 *Boyce* 519, at *page* 524, 89 *A.* 370; *Lofland's Brickyard Crossing Cases,* 5 *Boyce* 150, 91 *A.* 285; *Knopf v. P., W. & B. R. R.,* 2 *Penn.* 395, 46 *A.* 747.

3. The plaintiff claims that the crossing in question was a peculiarly dangerous one because in the case of a traveler on Market street approaching the crossing in an easterly direction, buildings on the north side of Market street obstructed the view of such traveler of an approaching south-bound train; if you find from the evidence that such crossing was a peculiarly dangerous one because of such obstruction to view, then it is for you to determine whether under the circumstances the defendant's duty to give due and sufficient warning of the approach of a southbound train to the crossing required it to maintain a flagman at the crossing. *Lofland's Brickyard Crossing Cases,* 5 *Boyce* 158, 91 *A.* 258.

4. The plaintiff claims that the crossing in question was a peculiarly dangerous crossing because in the case of a traveler on Market street approaching the crossing in an easterly direction,

buildings on the north side of Market street obstructed the view of such traveler of an approaching south-bound train, and also because the noise made by the passage of a north-bound train over such crossing shortly before the arrival of a south-bound train thereat, prevented such traveler from hearing the noise made by the approach of a south-bound train to the crossing; if you find from the evidence that such crossing was a peculiarly dangerous one because of such obstruction to view and because of such prevention of hearing, then it is for you to determine whether under the circumstances, the defendant's duty to give due and sufficient warning of the approach of a south-bound train to the crossing required it to maintain a flagman at the crossing. *Lofland's Brick yard Crossing Cases*, 5 *Boyce* 158, 91 *A*. 258.

5. The vigilance and care on the part of a railroad company to give warning of the approach of a train to its crossing is greater at crossings in a populous town or city than at ordinary crossings in the country; so what is reasonable care and prudence must depend on the facts of each case. *Lofland's Brickyard Crossing Cases*, 5 *Boyce* 150-155, 91 *A*. 285; *Grand Trunk Railway Co. v. Ives*, 144 *U. S*. 408-421, 12 *S. Ct*. 679, 36 *L. Ed*. 485 (which was approved by the United States Supreme Court in *Panama Railway v. Pigott*, 254 *U. S*. 552, 553, 41 *S. Ct*. 199, 65 *L. Ed*. 400).

6. If the jury believe that there existed at the crossing in question unusual dangers to those approaching on the highway, then the failure of the defendant company to station a flagman to give warning at such crossing is evidence to be considered by the jury in determining whether under all the circumstances the defendant was negligent of its duty in giving full and sufficient warning of the approach of its train to such crossing. *Lofland's Brickyard Crossing Cases*, 5 *Boyce* 158, 91 *A*. 258; *Northern Pac. R. Co. v. Moe* (*C. C. A*.), 13 *F*. (2d) 377.

7. If you find from the evidence that at the time of the accident the speed at which the defendant operated its south-bound train in question was, by reason of all the circumstances then existing at the said crossing a dangerous and reckless speed, and that such dangerous and reckless speed was the proximate cause of the

accident and shall also believe that John G. Gray was then free from any negligence on his part that contributed to his injury, then your verdict should be for the plaintiff. *Knopf v. P., W. & B. R. R., 2 Penn.* 392, at *page* 399, 46 *A.* 747.

8. The burden of establishing contributory negligence on the part of the plaintiff when ever it is relied upon as a defense to an action, rests upon the defendant. *Trimble v. P., B. & W. R. R., 4 Boyce* 519, 523, 89 *A.* 370.

9. If you find that the defendant on the said date operated the south-bound train in question over Market street in Bridgeville, a public highway, without signaling the approach of its locomotive engine by sounding two long blasts followed by two short blasts of the steam whistle on such locomotive engine at least three hundred yards from the crossing in question, then the defendant was negligent. Such blowing of the locomotive whistle is a statutory duty imposed on the defendant, and its performance of that duty does not relieve it of the duty to give such other warnings of the approach of its train as the circumstances of the crossing reasonably require. *Knopf v. P., W. & B. R. R. 2 Penn.* 397, 46 *A.* 747; *Lofland's Brickyard Crossing Cases,* 5 *Boyce* 150, 157, 91 *A.* 285.

10. If you believe from the evidence that John G. Gray on the evening of November 27, 1924, and prior to the accident in question saw a flagman at the said crossing signaling travelers on the said highway including himself the approach of a train to the said crossing, and if you further believe that the said John G. Gray in approaching the said crossing at the time of the said accident did not know that such flagman was not then present to give warning, then the absence of such flagman and the absence of any warning signals from him to John G. Gray immediately before the time of the accident in question were circumstances upon which he was entitled to some extent, but not entirely, to rely in thinking that it was then safe for him to cross the said crossing. The extent to which he was entitled to rely upon such circumstances is a question of fact for the jury upon all the evidence before it. *Martin v. B. & P. R. R. Co.,* 2 *Marv.* 123-131, 42 *A.* 442.

11.   In determining whether the deceased was at the time of the accident exercising reasonable care and caution you may consider the ease or difficulty of seeing an approaching train, any warning or notice that may have been given, or the want or absence of any warning or notice of the approaching engine and car, and any and all other facts, circumstances and conditions shown by the evidence to have been existing at the time of the accident bearing upon the point.   *Short v. P., B. & W. R. R.*, 7 *Penn.* 108, 114, 76 *A.* 363.

12.   As John G. Gray is dead and not here to speak for himself, the law clothes him with the presumption that in approaching the crossing that night he did his duty and used such care and precaution as an ordinarily prudent and careful man would use in like case.   By that presumption you are to be governed, unless the evidence directly or indirectly rebuts it and shows that he did not use such care and precaution.   *Lore, C. J.*, charging in *Martin v. B. & P. R. R.*, 2 *Marv.* 123-130, 42 *A.* 442;   *Evans v. P., B. & W. R. R.*, 2 *Boyce* 370-373, 80 *A.* 625.

13.   The plaintiff, however, would be entitled to recover notwithstanding there had been some negligence on the part of the deceased, if it was the negligence of the defendant alone that was the proximate or immediate cause of the death.   In other words, if, notwithstanding any previous negligence of the deceased, the company could have prevented the accident by the use of ordinary and reasonable care.   *Short v. P., B. & W. R. R. Co.*, 7 *Penn.* 108, at *page* 111, 76 *A.* 363.

14.   If your verdict be for the plaintiff it should be for such a sum as John G. Gray  would probably have earned during his life and which he would have left as his estae at the time of his death, taking into consideration his age, his ability, his disposition to labor, his earnings, and his habits of living and expenditure.   *Maxwell v. Wilmington City Ry. Co.*, 1 *Marv.* 199-208, 40 *A.* 945.

15.   In determining the probable duration of John G. Gray's life had not the accident in question intervened, you may consider the evidence before you as to his expectancy of life as shown by the

mortality tables as well as the evidence showing his physical condition at the time of his death.

16. If your verdict be for the plaintiff, such verdict should also include the amount of damage done to the automobile as the result of the accident in question, said automobile having been shown to have been the property of the said John G. Gray.

### Defendant's Prayers.

The defendant asks the court to charge the jury as follows:

1. That the jury should find a verdict in favor of the defendant.

2. Negligence is the want of ordinary care; that is, the failure to use such care as a reasonably prudent and careful man would use under similar circumstances. *Knopf v. P., W. & B. R. R. Co.*, 2 *Penn.* 392, 46 *A.* 747; *Boudwin v. Wilmington City Ry. Co.*, 4 *Penn.* 381, 60 *A.* 865.

3. The mere fact that a collision occurred is not of itself sufficient to warrant a recovery by the plaintiff but in order to recover the plaintiff must show by a preponderance of the evidence that there was negligence on the part of the defendant which was the proximate cause of the injury. *Buchanan v. P., B. & W. R. R. Co.*, 1 *Boyce* 83, 75 *A.* 872; *Id.*, 2 *Boyce* 204, 78 *A.* 776; *Trimble v. P., B. & W. R. R. Co.*, 4 *Boyce* 519, 89 *A.* 370; *Freeman v. Wilmington & P. Traction Co.*, 3 *Boyce* 107, 80 *A.* 1001; *Ewans v. Wilmington City Ry. Co.*, 7 *Penn.* 458, 80 *A.* 634; *San Antonio Ry. v. Wagner*, 241 *U. S.* 476, 36 *S. Ct.* 626, 60 *L. Ed.* 1110; *Southern Ry. Co. v. Gray*, 241 *U. S.* 333, 36 *S. Ct.* 558, 60 *L. Ed.* 1030; *Chesapeake Ry. Co. v. Carnahan*, 241 *U. S.* 241, 36 *S. Ct.* 594, 60 *L. Ed.* 979.

4. The defendant can only be held liable for such negligence as constitutes the proximate or direct cause of the collision. *Baldwin v. People's Ry. Co.*, 7 *Penn.* 81, 76 *A.* 1088; *Id.*, 7 *Penn.* 383, 72 *A.* 979; *Braunstein v. People's Ry. Co.*, 2 *Boyce* 55, 78 *A.* 609.

5. The negligence of the defendant is never presumed, but must always be proved, and the burden of proving the negligence of the defendant rests upon the plaintiff. *Buchanan v. P., B. &*

W. R. R. Co., 1 *Boyce* 83, 75 *A*. 872; *Id*., 2 *Boyce* 204, 78 *A*. 776; *Trimble v. P*., *B. & W. R. R. Co*., 4 *Boyce* 519, 89 *A*. 370.

6. A pure accident without negligence on the part of either party is not actionable, and if the jury should believe that what happened in this case was of that character, it would amount to what is termed in law as an unavoidable accident and the plaintiff could not recover. *Ogle v. P*., *W. & B. R. R. Co*., 3 *Houst*. 267; *Id*., 3 *Houst*. 302.

7. Where there is mutual negligence and the negligence of each is operative at the time of the accident, no action can be sustained therefor. *Buchanan v. P*., *B. & W. R. R. Co*., 1 *Boyce* 83, 75 *A*. 872; *Id*., 2 *Boyce* 204, 78 *A*. 776; *Trimble v. P*., *B. & W. R. R. Co*., 4 *Boyce* 519, 89 *A*. 370.

8. If the jury should be satisfied that there was negligence on the part of the defendant at the time of the accident, yet should also be satisfied that there was negligence on the part of the deceased which contributed to or entered into the accident at the time of the injury in any degree whatsoever, the plaintiff's testator would be guilty of contributory negligence, and the plaintiff could not recover as that would amount to contributory negligence and under such circumstances the law will not attempt to measure the degree of negligence contributable to each party. *Buchanan v. P*., *B. & W. R. R. Co*., 1 *Boyce* 83, 75 *A*. 872; *Id*., 2 *Boyce* 204, 78 *A*. 776; *Trimble v. P*., *B. & W. R. R*., 4 *Boyce* 519, 89 *A*. 370; *Garrett v. People's Ry. Co*., 6 *Penn*. 29, 64 *A*. 254; *Snyder v. People's Ry. Co*., 4 *Penn*. 145, 53 *A*. 433.

9. There is no duty on the part of a railroad company to station a flagman at a particular railroad crossing and the absence of a flagman will not excuse the person about to cross the track from using every reasonable precaution that an ordinarily prudent and careful person would use. *Martin v. B*., *P. R. R. Co*., 2 *Marv*. 123, 42 *A*. 442; *Lofland's Brickyard Crossing Cases*, 5 *Boyce* 150, 91 *A*. 285.

10. While any evidence of knowledge on the part of the deceased that the defendant company had a watchman at the crossing on the night of the accident, and before the time of the acci-

dent, may be considered by the jury in determining whether the deceased exercised such care and caution as a reasonably prudent person would have exercised under similar circumstances in approaching the crossing, such knowledge did not relieve the deceased from the duty of using proper precaution for the avoidance of the accident. While he may have had such knowledge he was, nevertheless, bound to the reasonable use of his senses of sight and hearing for the avoidance of injury. If there is no watchman at the crossing, where the traveler had seen one before, he cannot assume there is no danger and that no circumspection is required on his part in attempting to cross. The care and caution required of a person who approaches a crossing where there is no watchman, and who has knowledge that there was a watchman there a few hours before, is just such care and caution as a reasonably prudent and careful man, with the same knowledge would exercise.

11. A person approaching a railroad crossing with which he is familiar is bound to avail himself of his knowledge of the locality and act accordingly. If as he approaches the crossing his line of vision is obstructed, he must exercise his sense of sight and hearing, that is, he is bound to use greater care in looking and listening for approaching trains in time to avoid a collision with them, and if he does not look, or does not listen and for this reason does not see or does not hear an approaching train until it is too late to avoid a collision with it, and he is thereby injured or killed in consequence thereof, he is guilty of contributory negligence and no recovery can be had therefor. *Buchanan v. P., B. & W. R. R. Co.*, 1 *Boyce* 83, 75 *A.* 872; *Id.*, 2 *Boyce* 204, 78 *A.* 776; *Trimble v. P., B. & W. R. R. Co.*, 4 *Boyce* 519, 89 *A.* 370.

12. A person approaching a railroad crossing with which he is familiar should, in the exercise of due care, stop his car, or at least slacken its speed in order to discover the crossing in time to avoid the accident. *Nailon v. Maryland D. & V. R. R. Co.*, 6 *Boyce* 145, 97 *A.* 418.

13. If the jury believe that the plaintiff's testator as he approached the crossing in question saw, or by looking could have seen, the approaching train in time by the exercise of reasonable

diligence to slacken the speed of, or to stop, the automobile he was driving before it collided with the train, and he failed to do so, he was guilty of negligence, and if such negligence entered into or contributed to the collision at the time of the injury complained of this will defeat plaintiff's right to recovery. *Garrett v. People's Ry. Co.*, 6 *Penn.* 29, 64 *A.* 254.

14. One who is about to cross a railroad is required not only to look and listen for an approaching engine or train in time to avoid a collision with them, but he must do such other things and take such other precaution as a reasonably prudent and careful person would do and take under like conditions before attempting to cross the track, and, if he fails to exercise such care, whatever danger he could thereby have discovered and avoided, he incurs the peril thereof if he proceeds and for an injury arising under such fault he is left with remedy. *P., B. & W. R. R. Co. v. Buchanan*, 2 *Boyce* 204, 78 *A.* 776; *Trimble v. P., B. & W. R. R. Co.*, 4 *Boyce* 519, 89 *A.* 370.

15. The law regards a railroad crossing as a place of danger and the very presence of such a crossing is notice to the person approaching or attempting to cross it of the danger of collision with a passing train, and because of the danger the law imposes upon such person the duty to use reasonable care and caution and demands that he should use and exercise his senses of sight and hearing both for his own safety and protection and that of others and failing to do this he incurs the peril of any danger arising therefrom, and cannot recover for an injury that grew out of his own omission or neglect. Du*Ross v. P., B. & W. R. R. Co.*, 5 *Boyce* 467, 94 *A.* 766.

16. One approaching a railroad crossing is bound to know that it is a place of danger and he must give that attention to the sights and sounds of warning of an approaching train, if any there are, that a man of ordinary caution under like circumstances would give. *MacFeat v. P., W. & B. R. R. Co.*, 6 *Penn.* 513, 69 *A.* 744.

17. Where the surroundings of the railroad crossing are such as to make it certain that one about to cross the tracks could have seen the approaching train in time to have averted the collision,

if he had looked in time to have prevented it, he cannot be heard to say that he looked but did not see, but he will be held to have seen what was obvious. *Du Ross v. P., B. & W. R. R. Co.*, 5 *Boyce* 467, 94 *A.* 766; *Evans v. P., B. & W. R. R.*, 2 *Boyce* 370, 80 *A.* 625.

18. One about to cross a railroad track by means of the public highway where the liability to collision is great will be precluded by his contributory negligence from a recovery for an injury if he drives upon the track without looking for an approaching train, even though the railroad company has neglected to sound the alarm which the statute (*Rev. Code* 1915, § 1613) requires of it at such places. *P., B. & W. R. R. Co. v. Buchanan*, 2 *Boyce* 202, 78 *A.* 776; *Queen Anne's R. Co. v. Reed*, 5 *Penn.* 226, 59 *A.* 860, 119 *Am. St. Rep.* 301.

19. If a person drives up to a railroad crossing and upon it, not only without at least looking, but without listening to ascertain if any trains are approaching, and a collision and injury occur to him from a passing train which would have been prevented had the person so injured exercised the proper and ordinary prudence, care and caution, such person is guilty of contributory negligence and no recovery can be had for such injury to him. *Buchanan v. P., B. & W. R. R.*, 1 *Boyce* 83, 75 *A.* 872; *Id.*, 2 *Boyce* 204, 78 *A.* 776; *Du Ross v. P., B. & W. R. R.*, 5 *Boyce* 467, 94 *A.* 766; *Trimble v. P., B. & W. R. R.*, 4 *Boyce* 519, 89 *A.* 370.

20. If deceased did look and listen before he went upon the crossing, he must have seen or heard the approaching train and if he did see or hear it, he must be supposed to have taken the risk of being able to get over the crossing in time. If he did not look and listen, he failed to exercise the care and caution of an ordinary prudent person and such as under the law he was required to exercise. *Evans v. P., B. & W. R. R.*, 1 *Boyce* 562, 77 *A.* 831.

21. The plaintiff's testator was bound at all times to use ordinary prudence, care and diligence to avoid the accident and injury which occurred to him while crossing the railroad track of the defendant, and the care and diligence which he was bound to exercise must be in proportion to the danger to be avoided. *Bu-*

chanan v. P., B. & W. R. R., 1 Boyce 83, 75 A. 872; Id., 2 Boyce 204, 78 A. 776; Trimble v. P., B. & W. R. R. Co., 4 Boyce 519, 89 A. 370.

22. Where the owner of land is the operator of a public line of railroad with tracks and numerous sidings of necessity open to the public in country, town and city, it would impose intolerable burdens and require an enormous force of employees to watch and guard every possible opening along its lines, and would so cripple the movements of trains as to make rapid transit a matter of impossibility. The railroad company has a superior right of way at its crossings in the ordinary and necessary operation of its trains, and this right the traveler is bound to know and govern his actions accordingly. Weldon v. P., W. & B. R. R., 2 Penn. 1, 43 A. 156.

23. The verdict should be for that party in whose favor there is a preponderance or greater weight of testimony. By a preponderance of testimony is meant the greater weight of the evidence, not the mere number of witnesses or the greater number of witnesses, but the weight and strength of the testimony given. Buchanan v. P., B. & W. R. R. Co., 1 Boyce 83, 75 A. 872; Id., 2 Boyce 204, 78 A. 776; Trimble v. P., B. & W. R. R. Co., 4 Boyce 519, 89 A. 370; Girardo v. Wilmington & P. Traction Co., 5 Boyce 25, 90 A. 476; Freeman v. Wilmington & P. Traction Co., 3 Boyce 107; 80 A. 1001.

24. The plaintiff must show to the satisfaction of the jury by a preponderance of the evidence that the negligence which caused the accident was the particular negligence described in the "declaration" and that the negligence which caused the accident as plaintiff alleges was the negligence of the defendant, or else plaintiff cannot recover. Baldwin v. People's Ry. Co., 7 Penn. 81, 76 A. 1088; Freeman v. Wilmington & P. Traction Co., 3. Boyce 107, 80 A. 1001; Trimble v. P., B. & W. R. R. Co., 4 Boyce 519, 89 A. 370.

25. Where the evidence is conflicting the jury should reconcile it, if they can, but, if they cannot do so, they should accept that portion of the testimony which they believe to be worthy of

credit and reject that part of it, if any, which they believe to be unworthy of credit. *Buchanan v. P., B. & W. R. R.,* 1 *Boyce* 83, 75 *A.* 872; *Id.,* 2 *Boyce* 204, 78 *A.* 776; *Trimble v. P., B. & W. R. R.,* 4 *Boyce* 519, 89 *A.* 370.

26. The testimony of those witnesses who testify without qualification that they heard the whistle blow, the bell ring, or that the headlight of the locomotive was lit is of much more weight than that of those who merely say that they did not hear the whistle or bell, or see the headlight lit which might reasonably be attributable to want of attention at the time. *Parvis v. P.; W. & B. R. R.; 8 Houst.* 436, 17 *A.* 702; *Trimble v. P., B. & W. R. R.,* 4 *Boyce* 519, 89 *A.* 370; *Gatta v. P., B. & W. R. R. Co.,* 2 *Boyce* 551, 83 *A.* 788; *Id.,* 4 *Boyce* 38, 85 *A.* 721, 47 *L. R. A.* (*N. S.*) 932, *Ann. Cas.* 1916E, 1227; *Queen Anne's R. R. v. Reed,* 5 *Penn.* 226, 59 *A.* 860, 119 *Am. St. Rep.* 301.

27. If the jury should find for the plaintiff, their verdict should be for such a sum as they believe from the evidence that the deceased would probably have earned in his business during life and left as his estate at the time of his death, and which would have gone to his next of kin, taking into consideration his age, his reasonable expectancy of life as shown by the mortality tables, his ability and disposition to labor and his habits of living and expenditures. *MacFeat's Adm'r v. P., W. & B. R. R. Co.,* 5 *Penn.* 52, 62 *A.* 898; *Coughlan, Adm'r, v. P., B. & W. R. R. Co.,* 6 *Penn.* 242, 67 *A.* 148; *Short's Adm'r v. P., B. & W. R. R. Co.,* 7 *Penn.* 108, 76 *A.* 363.

28. The true measure of damages is not what would have been deceased's earnings during the remainder of his life, but what part of such earnings the jury believe from the testimony he would have saved and left at his death for distribution among his next of kin. *Short's Adm'r v. P., B. & W. R. R. Co.,* 7 *Penn.* 108, 76 *A.* 363.

PENNEWILL, C. J., charging the jury in the second trial:

You have been drawn to hear and determine the action of Miriam E. Gray, administratrix of John G. Gray, deceased, by which she seeks to recover from the Pennsylvania Railroad Com-

pany, the defendant, damages resulting from the death of the said John G. Gray, and the destruction of his automobile, alleged to have been caused by the negligence of the defendant company, on the twenty-seventh day of November, 1924, at the Market street crossing in the town of Bridgeville, Sussex County, Delaware.

The plaintiff contends that while the deceased was attempting to cross the tracks of the defendant at the Market street crossing, in the said town of Bridgeville, proceeding in an easterly direction, the automobile in which he was riding was struck by a locomotive of the defendant company which was being negligently operated by the defendant company along its right of way in a southerly direction, and that said automobile of the deceased was thrown along the right of way of said defendant, resulting in great damage to said automobile, and the death of the said John G. Gray.

It is further contended by the plaintiff that the view toward the north, being the direction from which the locomotive which struck the automobile of the deceased was approaching the crossing, was obstructed by buildings.

The defendant admits that it was operating the railroad in question, and that John G. Gray died as a result of injuries received in the collision, on November 27, 1924, at Bridgeville, Delaware, between a railroad train operated by the defendant and an automobile operated by the said John G. Gray; but denies that said train was being operated in a negligent manner, and further denies that it was responsible for the collision with the automobile of the deceased. The defendant contends that the deceased was himself guilty of negligence which entered into and was a proximate cause of the collision.

■■ The plaintiff's case is based upon the negligence of the defendant or its employees at the time and place of the fatal collision. The Courts of this State have defined negligence to be the want of ordinary care, that is, the failure to use such care as a reasonably prudent and careful man would use under similar circumstances. What constitutes negligence is a question of law for the Court, but whether negligence actually exists in a particular case is a question of fact for the jury.

It is, therefore, for you gentlemen to determine whether there was any negligence which was the proximate cause of the death of John G. Gray and the damage to his automobile, and, if there was, whether it was the negligence of the defendant or the negligence of John G. Gray himself.

Negligence is never presumed, but must always be proved; and the burden of proving the negligence of the defendant rests upon the plaintiff.

It is a well-settled principle of law that due care on the part of a railroad company at a point where its tracks cross a public highway, means the timely employment of such methods' as under the conditions there existing would ordinarily be necessary to notify persons attempting to cross said tracks, of the approach of its trains; and it is also a well-settled principle of law that due care on the part of individuals approaching such railroad crossings, means that they must use all the prudence, care and caution that a reasonably prudent and careful man would use under similar circumstances. The greater the danger to the individual, the greater is the duty imposed upon the railroad company to exercise due care, and likewise upon the individual to act with prudence and caution, in order to protect himself from injury. The law regards a railroad crossing as a place of danger, and the very presence of such a crossing is notice to the person approaching or attempting to cross it, of the danger of colliding with a passing engine or train.

[14] If there existed at the crossing in question, at the time of the accident, unusual dangers to persons approaching on the highway, it was the duty of the company to maintain at the crossing such means and agencies for the avoidance or prevention of injury as were reasonably required by the unusual situation. A railroad crossing, as we have said, is regarded as a place of danger, and particularly so if it is in a city or populous town, where existing conditions may make the crossing unusually dangerous. It is for the jury to say whether the crossing in question was such a crossing. The Court cannot say, as a matter of law, what particular means or agencies the company should employ in such case to

notify persons approaching the crossing of the danger there.existing, but we say it is the duty of the company to employ such means or agencies as are reasonably necessary to give timely and sufficient notice. What are the particular means or agencies that should be employed, and whether they have been employed, are questions for the jury to determine from all the evidence. While the law requires increased care on the part of the company at an unusually dangerous crossing, and such as is reasonably commensurate with the danger, it also requires that a person approaching such crossing on the highway shall exercise greater care to avoid injury. The greater the danger the greater the care demanded by the law, from both the company and the individual. It is the duty of the individual to approach a dangerous crossing in such a careful way that he can look and listen for a coming train in time to see it, if conditions are such that he can do so, and if he fails to look and listen when by so doing he could have seen the on-coming train in time to avoid collision therewith, and is injured because he failed to exercise such care, he would be guilty of contributory negligence.

And so we say, if the defendant company failed to make use of the appropriate and reasonably necessary means to warn the deceased at the time of the accident, such failure was negligence on its part, and if the accident occurred by reason thereof it would be liable, provided the deceased did not by his own carelessness contribute in some degree proximately to his injury.

The statute law of the State requires that the whistle on the locomotive be blown as the train approaches crossings, such as in this case, and there is no law that specifically requires the company to station a flagman at the crossing, nor to adopt any particular method of signals or means of warning the public. The method and means of warning the public, exclusive of statutory warnings, are questions for the company to determine and put into effect in the strict compliance, compelled by law, of its duty in giving timely and sufficient warning of the approach of its trains.

We say, therefore, that the failure of a railroad company to station a flagman at a crossing is a fact to be submitted to the jury, upon a proper showing of unusual dangers of the

crossing, and by the jury to be considered in determining, under all the circumstances, whether the company was negligent in its duty in giving due and sufficient warning of the approach of its train to the crossing. And we may add that such failure does not relieve the person approaching the crossing from the exercise of all the care and caution reasonably required by the unusual dangers of the crossing.

[17] In order for the plaintiff to recover, he must show to the satisfaction of the jury by a preponderance of the evidence that the negligence which caused the accident was the particular negligence relied on in this case.

It is not an unusual occurrence in the operation of a railroad, where there are double tracks, for two trains proceeding in opposite directions to pass over a crossing almost simultaneously, and this is a fact which travelers on the public highway are bound to know. If the train first reaching the crossing makes so much noise that the approach of the other train is not heard by said traveler, and an accident results, no negligence can be imputed to the railroad company from that circumstance alone. The knowledge of the fact that there may be two trains passing over a crossing about the same time, and that the noise caused by the one may prevent the other from being heard, makes it necessary for the traveler to use due care in looking in both directions before attempting to cross, and also imposes upon the railroad company a degree of care commensurate with the circumstances.

The railroad company has the superior right of way at its crossings in the ordinary and necessary operation of its trains, and this right the traveler is bound to know and govern his actions accordingly. One who is about to cross a railroad is required not only to look and listen for an approaching train, in time to avoid a collision with it, if by looking and listening he could have seen the train, but he must do such other things and take such other precautions as a reasonably prudent and careful person would do and take under like condtions, before attempting to cross the tracks, and if he fails to exercise such care, whatever danger he

could thereby have discovered and avoided, he incurs the peril thereof if he proceeds.

A person approaching a railroad crossing is bound to avail himself of his knowledge of the locality, and act accordingly. If, as he approaches the crossing, his line of vision is obstructed, he is bound to use greater care in looking for approaching trains in time to avoid a collision with them, if he does not look, and for that reason does not see an approaching train, until it is too late to avoid a collision with it, and he is injured or killed in conquence thereof, he would be guilty of contributory negligence and no recovery could be had therefor.

There is a presumption of law that a person who is killed by a train at a railroad crossing was at the time in the exercise of due and proper care, which means that he did everything that he was required to do for the prevention of accident and avoidance of injury. This presumption in favor of the deceased exists because of the fact that his lips are sealed by death, and he cannot tell what he did, or speak with reference to the circumstances attending the accident. But it is a presumption only, and, while it should be considered by the jury, it may be rebutted or removed by any evidence that convinces the jury that the deceased was not, at the time of the accident, exercising due and proper care to avoid injury. This principle of law may be applied to the present case as follows: John G. Gray is dead as a result of the injuries he received. The law clothes him with the presumption that in approaching the crossing on the night his car was struck by the train, he did his duty, used such care and precaution as an ordinarily prudent and careful man would use in like case. By this presumption you are to be governed as to the deceased's exercise of proper care, unless in your judgment the evidence directly or indirectly rebuts it and shows that he did not use proper care and caution in attempting to cross the railroad tracks.

While any evidence of knowledge on the part of the deceased that the defendant company had a watchman at the crossing on the night of the accident, and before the time of the accident, may be considered by the jury in determining whether the

deceased exercised such care and caution as a reasonably prudent person would have exercised under similar circumstances, in approaching the crossing, such knowledge did not relieve the deceased from the duty of using proper precaution for the avoidance of the accident. While he may have had such knowledge, he was, nevertheless, bound to the reasonable use of his senses of sight and hearing for the avoidance of injury. If there is no watchman at the crossing where the traveler had seen one before, he cannot assume there is no danger and that no circumspection is required on his part in attempting to cross. To repeat, the care and caution required of a person who approaches a crossing where there is no watchman, and who has knowledge that there was a watchman there a few hours before, is just such care and caution as a reasonably prudent and careful man, with the same knowledge, would exercise.

A pure accident, without negligence on the part of either party, is not actionable, and if the jury should believe that what happened in this case was of that character, it would amount to what is termed in law as an unavoidable accident, and the plaintiff could not recover. The mere fact that a collision occurred is not of itself sufficient to warrant a recovery by the plaintiff, but in order to recover the plaintiff must show by a preponderance of the evidence that there was negligence on the part of the defendant, which was the proximate cause of the accident.

If you should be satisfied that there was negligence on the part of the defendant at the time of the accident, and should also be satisfied that there was negligence on the part of the deceased at the time of the accident, the plaintiff cannot recover, as that would amount to contributory negligence, and under such circumstances the law will not attempt to measure the degree of negligence. The duty of proving contributory negligence rests upon the defendant.

If you find that the defendant on the date in question operated the southbound train in question over Market street, in Bridgeville, a public highway, without signaling the approach of its locomotive engine by sounding two long blasts of the steam,

whistle on such locomotive engine, at least three hundred yards from the crossing in question, the defendant was negligent and failed in the performance of a statutory duty, but the company would not be liable on that account unless you are satisfied that the death of John G. Gray was caused thereby. Such blowing of the locomotive whistle is a statutory duty imposed on the defendant, and its performance of that duty does not relieve it of the duty to give such other warnings of the approach of its trains as the circumstances of the crossing reasonably require.

The testimony of those witnesses who testify without qualification that they heard the whistle blow, the bell ring, or that the headlight of the locomotive was lit, is of much more weight than that of those who merely say that they did not hear the whistle or bell, or see the headlight lit, which might be reasonably attributable to want of attention at the time.

Where the evidence is conflicting, you should reconcile it if you can, but, if you cannot do so, you should accept that portion of the testimony which you believe to be worthy of credit, and reject that part, if any, which you believe to be unworthy of credit, taking into consideration the witnesses as they appear upon the stand, their interest or bias, if any, their apparent fairness, and their intelligence and opportunity for knowing the things to which they testified. You are the sole judges of the credibility of the witnesses and the weight and value of their testimony.

Whatever verdict you may find, it should be for that party in whose favor there is a preponderance or greater weight of the evidence. By a preponderance of evidence is not meant the mere number of witnesses, but the weight and strength of the evidence.

In conclusion we say, if you believe from a preponderance, that is, the greater weight of the evidence, that the death of John G. Gray was caused by the negligence of the defendant company, and also believe that John G. Gray was himself free from any negligence that contributed proximately to his death, your verdict should be in favor of the plaintiff. But if you are not satisfied by the preponderance of the evidence that the death of the said John G.

Gray was caused by the negligence of the defendant company, or, if you believe from the evidence that John G. Gray's own negligence contributed to, and was the proximate cause of, his death, your verdict should be in favor of the defendant, even though you believe the defendant company was also guilty of some negligence.

If you should find for the plaintiff, your verdict should be for such a sum as you believe from the evidence the deceased would probably have earned in his business during life, and left as his estate at the time of his death, and which would have gone to his next of kin, taking into consideration his age, his reasonable expectancy of life as shown by the mortality tables, his ability and disposition to labor, and his habits of living and expenditure. If your verdict should be for the plaintiff, it should also include the damage to the automobile of the deceased, the measure of which is the difference between the value of said automobile immediately before the collision, and its value immediately after the collision.

Verdict for defendant.